829 So.2d 521 (2002)
STATE of Louisiana
v.
Robert COX.
No. 02-KA-0333.
Court of Appeal of Louisiana, Fifth Circuit.
September 30, 2002.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for defendant-appellant.
Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Martin Bellanger, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, State of Louisiana, Gretna, LA, for plaintiff-appellee.
*522 Panel composed of Judges JAMES L. CANNELLA, CLARENCE E. McMANUS, and HENRY G. SULLIVAN, JR., Pro Tempore.
HENRY G. SULLIVAN, JR., Judge Pro Tempore.
Defendant, Robert Cox, along with codefendants, Jermaine Starks and Lawrence Williams, Jr., were charged in a bill of information with aggravated burglary in violation of LSA-R.S. 14:60. The bill of information was later amended to include an additional charge of armed robbery in violation of LSA-R.S. 14:64. Defendant initially pled not guilty and filed motions to suppress statements, identification and evidence. The motions to suppress were denied after hearing. Thereafter, defendant withdrew his not guilty pleas and pled guilty to both charges without reserving his rights under Crosby.[1] In accordance with the plea agreement, the trial court agreed to a sentencing range between 15 and 25 years and ordered a presentence investigation.
Prior to sentencing, defendant orally moved to withdraw his guilty pleas which was denied. Defendant was subsequently sentenced to 20 years of imprisonment at hard labor on his aggravated burglary conviction with five years suspended in favor of active probation. He was also ordered to pay one-third restitution of the total amount of money stolen, which was between $16,000 and $17,000, within five years or to serve an additional five years in prison. On his armed robbery conviction, defendant was sentenced to 15 years without the benefit of parole, probation or suspension of sentence. He was ordered to pay restitution in connection with this sentence, as well, in the amount of one-third of the money stolen or to serve an additional five years in prison. The trial court ordered the two sentences to run concurrently.
FACTS
On February 22, 2000, Officer Philip Saladino with the Gretna Police Department was patrolling in his marked police unit when he observed a driver of a vehicle wearing headphones in violation of state law. He pulled the vehicle over at which time the driver, co-defendant Jermaine Starks, exited. Officer Saladino ordered Starks back into the vehicle. When Officer Saladino approached the vehicle, Starks was very fidgety and acting nervous. Starks presented an identification card but was unable to produce a driver's license, proof of insurance or registration papers for the vehicle. Officer Saladino asked Starks to step away from the vehicle at which time Officer Saladino observed the handle of a revolver on the floorboard.
Starks denied ownership of the gun stating it was for "one of his boys" but did not know which one and did not give any names. Officer Saladino secured the gun until he could determine the identity of the owner and had the vehicle towed for no insurance. He wrote Starks a few traffic tickets and released him.
Meanwhile, Detective Durel Pellegrin was investigating a home invasion that occurred in Lake Timberlane Estates the day before Starks was stopped. The victims had withdrawn a large amount of money from the Bank One on Manhattan and went home. Once they were home, a white male, later identified as defendant, knocked on the door. Bum Kim opened the door at which time two armed men, later identified as co-defendants Starks and Williams, rushed inside and took the money off the table. One of the perpetrators then fired a shot into the air inside *523 the home to warn the victims not to come outside and to warn the victims they had bullets in their guns.
During the investigation, Detective Pellegrin learned that the gun seized from Starks during the traffic stop matched the projectile that was recovered from the scene of the burglary. Accordingly, an arrest warrant was obtained for Starks. After his arrest, Starks gave an inculpatory statement and implicated defendant and Williams as participants in the crime. Additionally, as part of the investigation, the police obtained still photographs from customers who were at the Bank One around the same time the victims made their withdrawal. The victim, Bum Kim, identified defendant in the pictures as being the same person who knocked on his door right before the two armed men rushed inside his home.
ANALYSIS
Defendant argues the trial court erred in denying his motion to suppress the pistol seized from Starks' vehicle. Defendant contends that LSA-R.S. 32:295.2 prohibits an officer from stopping, detaining or searching a vehicle solely because the driver is wearing headphones. However, we find defendant is precluded from raising this issue on appeal because he failed to reserve his right to appeal this issue when he pled guilty.
During the plea colloquy, the trial judge informed defendant that, by pleading guilty, he was waiving his right to appeal and, specifically, his right to appeal an illegal search and seizure which defendant acknowledged he understood. This is evidenced by the following colloquy:
COURT:
If you go to trial and in the event of a conviction, that is, if the judge or jury would find you guilty, you have the right to appeal. Again, in the event of an appeal, if you can't afford an attorney, one would be appointed for you that would cost you nothing. But by pleading guilty, you are waiving and giving up these rights. Do you understand that, Mr. Cox?
DEFENDANT:
Yes, Sir.
COURT:
If you plead guilty you don't have the right to assert allegations such as an illegal arrest, an illegal search and seizure, an illegal confession, illegal lineup or lack of sufficient evidence to convict you.
In light of this explanation and nature of the consequences of the guilty plea, do you wish to plea [sic] guilty or not guilty?
DEFENDANT:
Guilty.
In addition, defendant signed an acknowledgment of constitutional rights and waiver of rights form. The form, which was initialed and signed by defendant, reflects defendant wished to plead guilty and that by pleading guilty he understood he did not have the right to assert any allegation of defects such as an illegal arrest, an illegal search and seizure, an illegal confession, an illegal lineup and lack of sufficient evidence to convict him.
In State v. King, 99-1348 (La.App. 5 Cir. 5/17/00), 761 So.2d 791, 793, writ denied, 00-1824 (La.6/29/01), 794 So.2d 822, this Court stated:
A guilty plea normally waives all nonjurisdictional defects in the proceedings prior to the entry of the guilty plea, and precludes review of such defects either by appeal or post conviction relief. A defendant may be allowed appellate review if at the time he enters a guilty plea, he expressly reserves his right to appeal a specific adverse ruling in the *524 case. Under Crosby, defendant may reserve his right to appeal an adverse prior ruling of the trial court. In this case, defendant failed to reserve the right to appeal under Crosby in the guilty plea proceedings. Accordingly, this issue was not properly preserved for appeal and we decline to consider it.
(Internal citations omitted).
Likewise, in the present case, defendant failed to reserve the right to appeal the trial court's ruling on the motion to suppress the evidence under Crosby when he entered his guilty plea. Therefore, we cannot address defendant's claim.
We have reviewed the record for errors patent pursuant to LSA C.Cr.P. art. 920 and note that the trial court imposed illegal sentences. As part of the sentence on both the aggravated burglary and armed robbery convictions, the trial court ordered defendant to pay restitution of one-third of the total amount of money stolen or to serve an additional five years in prison. The trial court erred in imposing prison time for nonpayment of restitution. It is apparent from the record that defendant is indigent.[2] An indigent person may not be incarcerated simply because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Monson, 576 So.2d 517 (La.1991). We note that LSA-C.Cr.P. art. 886 permits the State to enforce collection of the amount owed in the same manner as a money judgment in a civil case. State v. Monson, supra.
Additionally, the trial court imposed an illegally lenient sentence on count one, aggravated burglary. Specifically, the trial court sentenced defendant to 20 years but suspended five years of the sentence in favor of five years of active probation. LSA-C.Cr.P. art. 893(A) provides that the court shall not suspend the sentence of a conviction for a crime of violence as defined in LSA-R.S. 14:2. Aggravated burglary is defined as a crime of violence under LSA-R.S. 14:2(13)(v). Therefore, the trial court improperly suspended a portion of defendant's sentence on count one.
Neither the State nor defendant raise the issue of an illegally lenient sentence on appeal. However, in State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, the Supreme Court expanded an appellate court's error patent review to include illegally lenient sentences. As discussed above, both sentences in this case were illegal because they imposed prison time for nonpayment of restitution.
Accordingly, we affirm defendant's convictions on count one and count two. We vacate defendant's sentences on both counts and remand the matter for resentencing in accordance with the above.
CONVICTIONS AFFIRMED; SENTENCES VACATED; MATTER REMANDED FOR RESENTENCING.
NOTES
[1] State v. Crosby, 338 So.2d 584(La.1976).
[2] Defendant was represented at trial by the Indigent Defender Board and represented on appeal by the Louisiana Appellate Project.