860 So.2d 237 (2003)
STATE of Louisiana
v.
Anna GREEN.
No. 03-KA-410.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 2003.
*238 Anthony G. Falterman, District Attorney, 23rd Judicial District, Donald D. Candell, Assistant District Attorney, Gonzales, LA, for Appellee.
Arcenious F. Armond, Jr., Gretna, LA, for Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Defendant pled guilty to manslaughter, then later sought to have her plea withdrawn. For the foregoing reasons, the *239 defendant's conviction and sentence are affirmed.
The St. James Parish grand jury returned an indictment on March 1, 2001, charging defendant, Anna Green, with second degree murder in violation of LSA-R.S. 14:30.1, which allegedly occurred on or about January 8, 2001. Green was arraigned on March 12, 2001 and pled not guilty. On July 15, 2002, Green filed a motion and order for change of venue that was denied on that same date. On August 1, 2002, the indictment was amended to charge Green with manslaughter in violation of LSA-R.S. 14:31. On that same date, Green was arraigned and pled guilty to the reduced charge of manslaughter. The trial court ordered a pre-sentence investigation report with a cap of 20 years.
Green filed a motion to withdraw guilty plea on October 23, 2002 that was denied on November 6, 2002. On November 8, 2002, the trial court sentenced Green to imprisonment at hard labor for 15 years. The trial court issued written reasons for sentence. Defense counsel objected to the sentence and informed the trial court that he would file a motion to reconsider sentence and a motion for appeal. On November 18, 2002, Green filed a motion for appeal that was granted. On November 27, 2002, Green filed a motion to reconsider sentence that was denied on December 10, 2002.
Green admitted during her guilty plea colloquy that, on January 8, 2001, in the Parish of St. James, she committed manslaughter by killing Cardell Clayton while involved in a domestic argument with him. The record reflects that Green stabbed the victim in the left chest.
Green pled guilty to one count of manslaughter. An unqualified guilty plea waives all non-jurisdictional defects in the proceedings prior thereto and precludes review thereof either by appeal or post-conviction relief.[1] A defendant may be allowed appellate review if at the time he enters a guilty plea, he expressly reserves his right to appeal a specific adverse ruling in the case.[2]
On appeal, Green argues that the trial court erred by not quashing the bill of indictment and by denying the motion for change of venue. However, we note that Green did not reserve her right to appeal any alleged defects regarding the indictment or the trial court's ruling on the motion for change of venue. Therefore, we refuse to consider Green' first two assignments of error.
In her third assignment of error, Green argues that the trial court erred in denying the motion to withdraw guilty plea. She contends that her 15-year sentence was excessive, and that it was her understanding, based on discussions with the prosecutor, that her sentence would be five to six years.
On August 1, 2002, the indictment was amended to charge Green with manslaughter. On that same date, Green was arraigned on the amended charge and pled guilty. Green testified that she was 22 years old, that she had completed the tenth grade, that she could read and write the English language, and that she was not under the influence of any medication or drugs.
Green testified that her counsel had advised her of her rights, that she understood she was presumed innocent until *240 proven guilty beyond a reasonable doubt, that the burden was upon the State to prove her guilty, that she had the right to a trial by jury, that she had the right to counsel and that her counsel would continue to represent her throughout the trial, including an appeal, if necessary.
Green further testified that she understood that she had the right to confrontation, that the State had to produce witnesses in court so her counsel could cross-examine them, that she had the privilege against self-incrimination, that she did not have to take the stand and testify, that in the event of a conviction she could have the right to an appeal, that the conviction resulting from her plea could be used to enhance the penalty for a subsequent felony conviction, and that she understood her post-conviction relief rights.
The trial judge advised Green of the elements of manslaughter and the penalty for manslaughter: imprisonment at hard labor for not more than 40 years. The judge told Green that her counsel and the prosecutor had conducted plea bargaining in her case, that they had agreed to a pre-sentence investigation (PSI), that once it was received, she could find out what was on it generally, and that if she wanted to add anything or any letters of recommendation she could do so.
At that point, the prosecutor stated that there should be a 20-year cap on the pre-sentence investigation. Green testified that it had been explained to her what a 20-year cap meant, that she did not intend to appeal any rulings or orders of the court, that she still wanted to plead guilty, that she had not been promised anything by anyone in order to get her to plead guilty other than this plea bargain. Green then stated that she was told that if she plea bargained, she would get "like five or six years." The trial judge told Green:
That is not a guarantee. That is something that somebody might have told you. But the PSI, with a cap of twenty years, means that it cannot be more than twenty years no matter what. Do you understand that?
Green answered affirmatively. She testified that no one had threatened, coerced, beat her, or done anything else to persuade her to plead guilty. The trial judge did not ask her if she still wished to waive her rights and plead guilty.
She admitted that, on January 8, 2001, she had committed manslaughter by killing Cardell Clayton while involved in a domestic argument with him. Green testified that she had read and understood all of the questions and answers on the form, that her attorney had explained this form to her and the consequence of her guilty plea, and that her signature appeared on the form.
The trial judge then stated that he was convinced Green had been fully advised of her constitutional rights, that she understood the nature of the charge against her, that she understood the penalty to be imposed, that her plea was free and voluntary, that there was a factual basis for the plea, and that Green was, in fact, guilty of the crime charged. Defense counsel stated that his signature appeared on the bottom of the form, and that in signing it, he acknowledged he was present during the questioning of Green, that he informed her of her rights and the consequence of pleading guilty, and that he was satisfied that her guilty plea was voluntary. The trial judge stated he needed Green to initial three places on the form where it described the 20-year cap.
Defense counsel stated on the record that there were protracted negotiations regarding the plea agreement, that the defense wanted a stipulated number of years, and that he understood that the court *241 was not inclined to participate in those discussions. The following exchange then occurred:
THE COURT:
That is correct. I did not. It's between you and the State. Go ahead.
MR. ARMOND: [Defense counsel]:
I understand, Your Honor. Thank you. There have been discussions between the defense and Mr. Marshall for the State, as well as Mr. Kliebert for the State, that we have reviewed the criminal history of this defendant, and lack of criminality, the fact that she has a good job, as well as the facts and circumstances of this case. And that it is our understanding that the pre-sentence investigation should reflect a sentence of approximately five to six years or even less. And that is what has been conveyed to my client, that it is anticipated that the pre-sentence investigation will in fact come down in that neighborhood or below.
THE COURT:
But you have conveyed to her it is the anticipation of you and Mr. Marshall and Mr. Kliebert? You have not involved the Court in that in any way; is that correct?
MR. ARMOND:
That's correct, Your Honor.
MR. MARSHALL:
And, your Honor, for the record, the State's position is Ms. Green is pleading to a pre-sentence investigation with a cap of twenty years. And that is the sole agreement that the State has had in this matter. And the State doesn't deny that we had conversations or discussions with Mr. Armond about his client, but the State's position is the pre-sentence investigation with a cap of twenty years, and that the sentencing will be the sole function of the Honorable Judge Peytavin. So we just ask that the Honorable Court ask her again has she has [sic] been promised anything by anyone other than toin order to get her to plead guilty, other than the plea agreement. I would have her answer no on the record, just to be clear on that.
THE COURT:
Have you been promised anything by anyone in order to get you to plead guilty, other than a pre-sentence investigation with a cap of twenty years?
THE DEFENDANT:
No.
THE COURT:
Did you say no?
THE DEFENDANT:
Yeah.
Following this exchange, the trial judge accepted Green's guilty plea and the plea bargain. He ordered a pre-sentence investigation with a cap of 20 years and deferred sentencing to a later date. He told Green that it usually took about two months for the PSI to be completed, and that her counsel would tell her if she had anyone who wanted to send in letters or add anything to the PSI, she would have the opportunity to do so.
On October 23, 2002, Green filed a motion to withdraw guilty plea. In that motion, Green stated that she pled guilty under advice of counsel, that she understood the sentencing range would be from five to seven years, that the court ordered a PSI which was done, that the PSI indicated a sentence of 15 to 20 years was appropriate, and that based on the foregoing, she moved to withdraw her guilty plea.
On November 6, 2002, a hearing was held on the motion to withdraw guilty plea. Defense counsel stated that it was the understanding of Green and defense counsel that the appropriate sentencing range *242 was five to seven years, that a PSI would be ordered, that if the PSI came back suggesting any sentence greater than five to seven years, that they would be filing a motion to withdraw the guilty plea and ask that the matter be set for trial. Defense counsel argued that he had seen the PSI, disagreed with it, and was therefore asking the court to allow Green to withdraw the guilty plea and set the matter for trial.
The prosecutor responded that he was in total opposition to the motion, that he had obtained a copy of the transcript of the Boykin[3] process, that the transcript showed that the court went out of its way to make sure Green understood that she was pleading guilty to a PSI with a 20-year cap, that it was stressed to her over and over again, and that she was advised that no promises were made other than the fact she was pleading to a PSI with a 20-year cap.
Defense counsel stated that it was in the transcript that he would be filing a motion to withdraw guilty plea. The prosecutor and the trial judge both stated that they did not see anything in the transcript about defense counsel filing a motion to withdraw guilty plea. Defense counsel then stipulated that the "precise language" was not in the transcript. After hearing arguments of counsel, the trial judge denied the motion, stating that the 20-year cap was honored. Defense counsel noted his objection for the record.
LSA-C.Cr.P. art. 559(A) gives the district court judge the discretion to permit a withdrawal of a guilty plea at any time prior to sentencing. Once the defendant has been sentenced, only guilty pleas which are constitutionally infirm may be withdrawn by appeal or post-conviction relief.[4] A guilty plea is constitutionally infirm when the defendant is induced to enter that plea by a plea agreement which is not fulfilled.[5] Generally, a denial of a motion to withdraw a guilty plea will not be reversed on appeal if the record clearly shows the defendant was informed of his rights and the consequences of his plea, and that the plea was entered into voluntarily.[6]
In State v. Cook,[7] the court stated:
Reasons supporting the withdrawal of a guilty plea would ordinarily include factors bearing on whether the guilty plea was voluntarily or intelligently made, such as a breach of a plea bargain, inducement, misleading advice of counsel, strength of the evidence of actual guilt or the like. A mere change of heart or mind by the defendant as to whether he made a good bargain will not ordinarily support allowing the withdrawal of a bargained guilty plea. Without fraud, intimidation or incompetence of counsel, a guilty plea is not made less voluntary or informed by the considered advice of counsel.
A guilty plea is also invalid when the defendant is induced to plead guilty by a plea agreement or by what the defendant reasonably believes is a plea agreement and the terms of the bargain are not satisfied. State v. Holmes, 475 So.2d 1057 (La.1985).
*243 After a review of the record, we find that Green was fully informed of her rights as well as the consequences of her guilty plea. Although defense counsel reported an anticipated sentencing range of between five and seven years, the trial judge elicited Green's testimony that she understood there was no guarantee. Further, there is no indication that her guilty plea was in any way coerced. The State stressed to Green that the plea bargain was based on a 20-year cap on the PSI, which Green stated that she understood.
While Green may now be dissatisfied with her sentence, that does not provide a basis for withdrawal of a guilty plea.[8] Further, Green benefited substantially from the plea bargain, a factor that should be considered in evaluating a request to withdraw a plea.[9]
Green next argues that her 15-year sentence is excessive because she committed the crime in self-defense, was the victim of domestic violence, had no prior criminal history, has an infant child, and has expressed remorse.
Under LSA-C.Cr.P. art. 881.2(A)(2), a "defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." This provision applies both to agreed sentences and to agreed sentence ceilings or "caps."[10]
In the instant case, when the Green entered a plea of guilty as charged, she signed and initialed a form in conjunction with the plea. That form, in addition to the colloquy between the trial judge and the defendant before the plea, indicate with certainty that the defendant agreed to a sentencing cap of 20 years. Therefore, the sentence of 15 years is within the limits of the agreement. Accordingly, Green is precluded from raising a claim of excessiveness of sentence on appeal, and we find that the trial court correctly denied Green's motion to reconsider sentence.[11]
Finally, Green has asked this Court to review the record for errors patent.
We note that Green never specifically testified that she waived her rights during the Boykin colloquy. However, she did testify that she understood her rights, that she had read and understood all of the questions and answers on the form, and that her attorney had explained the form to her and the consequence of her guilty plea.
Additionally, the "form" Green signed is not entitled "Waiver of Rights" form, nor does the form indicate that she waived her rights. The questions on the form ask whether Green understands her rights. Green wrote "yes" next to those questions and placed her initials next to them. The form states almost verbatim what the trial judge asked Green during the Boykin colloquy.
Green, however, does not challenge the constitutional infirmity of the plea on these grounds.
In State v. Campbell,[12] the Louisiana Supreme Court stated that, "The appellate *244 court should refrain from employing errors patent review to set aside guilty pleas about which defendant makes no complaint and which resulted in disposition of the case favorable to the defendant."
Accordingly, as per Campbell, supra, we decline review of this issue.
Based on the foregoing, Green's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] State v. Raines, 00-1942, p. 3 (La.App. 5 Cir. 5/30/01), 788 So.2d 630, 632; State v. Crosby, 338 So.2d 584, 588 (La.1976).
[2] State v. Cox, 02-0333, p. 5 (La.App. 5 Cir. 9/30/02), 829 So.2d 521, 523-524.
[3] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
[4] State v. Gross, 95-621 (La.App. 5 Cir. 3/13/96), 673 So.2d 1058, 1059-1060.
[5] State v. Dixon, 449 So.2d 463, 464 (La. 1984).
[6] State v. Raines, 00-1942 (La.App. 5 Cir. 5/30/01), 788 So.2d 630, 633.
[7] 32,110 (La.App. 2 Cir.6/16/99), 742 So.2d 912, 919-920 (citations omitted),
[8] State v. Boatright, 406 So.2d 163, 165 (La. 1981); State v. Batiste, 517 So.2d 371, 372 (La.App. 5 Cir.1987).
[9] See, State v. Curtis, 28,309 (La.App.2d Cir.8/21/96), 679 So.2d 512, writ denied, 96-2322 (La.2/7/97), 688 So.2d 496.
[10] State v. Lee, 02-529 (La.App. 5 Cir. 10/29/02), 831 So.2d 395, 397 (citing State v. Young, 96-0195 (La.10/15/96), 680 So.2d 1171, 1174).
[11] State v. Lee, 02-529 (La.App. 5 Cir. 10/29/02), 831 So.2d 395, 396-397.
[12] 01-329 (La.11/2/01), 799 So.2d 1136.