WICKER, J.
Defendant, Terence C. Williams, appeals the trial court's denial of his motion to withdraw his pleas of guilty to one count of armed robbery and one count of obscenity. Mr. Williams specifically contends that it was an abuse of the trial court's discretion to deny his request made prior to sentencing in light of his assertion that he did not fully understand the sentence that was agreed to as a part of the plea agreement. For the reasons that follow, finding no abuse of discretion, we affirm the trial *1252 court's ruling and, accordingly, affirm Mr. Williams' convictions and sentences.
FACTS AND PROCEDURAL HISTORY:
On June 25, 2015, the Jefferson Parish District Attorney filed a bill of information charging Mr. Williams with one count of armed robbery, a violation of La. R.S. 14:64 (count one), and one count of obscenity, a violation of La. R.S. 14:106 (count two). At his arraignment on July 6, 2015, Mr. Williams entered pleas of not guilty to both counts.[1]
On December 11, 2015, defense counsel filed a motion for a competency examination on the ground that Mr. Williams had previously been diagnosed and treated for mental illness. Thereafter, Mr. Williams was examined by experts, Dr. Rafael Salcedo, a forensic psychologist, and Dr. Richard Richoux, a forensic psychiatrist, for purposes of determining whether Mr. Williams suffered from any mental disorder affecting his competency to proceed to trial and to assist counsel in the preparation of his defense. A competency hearing was held on March 9, 2016. According to the experts' report entered into evidence at the hearing, Drs. Salcedo and Richoux determined that their examination failed to reveal evidence that Mr. Williams was manifesting any signs or symptoms of a psychiatric disorder.[2] Additionally, despite "significant substance abuse problems involving daily use of both marijuana and cocaine when ... not in institutional confinement," the experts opined that Mr. Williams fully understood the nature of the proceedings and the charges against him, and was capable of assisting his attorney in preparing his defense. Relying on the experts' findings outlined in their report, which included their assessment of Mr. Williams' "serious drug addiction," the trial court found Mr. Williams competent to proceed to trial.
Also on March 9, 2015, immediately following the competency hearing, defense counsel informed the court that she had shown to Mr. Williams all of the discovery, including various videos/audios, which the State intended to use against him at trial to support a conviction, and that Mr. Williams had been made "completely aware of all of the State's evidence against him." Defense counsel further advised that, based on his two prior felony convictions, Mr. Williams had been determined to be a multiple felony offender and that, as such, he had been advised that his status as a "triple bill" would dramatically increase in his sentencing range and exposure at trial (i.e. , 66 to 198 years) if convicted on the charge of armed robbery (or any felony). Additionally, defense counsel stated Mr. Williams had been informed of the State's plea offer-i.e. , 35 years' imprisonment, with no multiple bill[3] -but that, despite her professional recommendation that accepting the plea was in his *1253 best interest and that the "35 years [was] a today offer," Mr. Williams had chosen to refuse the offer in favor of proceeding to trial.
Because of Mr. Williams' refusal to accept the plea offer in favor of trial, defense counsel requested that the trial court conduct a Frye hearing.[4] During the Frye hearing, the trial judge explained to Mr. Williams that, if convicted of armed robbery, he would be a triple felony offender subject to a mandatory minimum sentence of 66 years up to 198 years at hard labor without benefit of probation, parole or suspension of sentence. The trial judge further explained to Mr. Williams-and Mr. Williams stated that he understood-that if he agreed to plead guilty, the State would agree not to file a multiple offender bill against him and that, "based upon [his] attorney's efforts on [his] behalf," the court would "reluctantly" agree to sentence him to only 35 years, which was a "today only option," but that if he refused to plead guilty, "all bets were off" in terms of what sentence the court might give, which the trial court "promise[d]" would not "be only 35 years after today." When asked by the court if he still wished to proceed to trial, Mr. Williams responded that he would "take 35."
Mr. Williams then withdrew his former pleas of not guilty and entered pleas of guilty as charged on both counts for an agreed upon sentence of 35 years imprisonment in the Department of Corrections without benefit of probation, parole or suspension of sentence as to count one, and three years' imprisonment in the Department of Corrections as to count two, with the sentences to run concurrently. Thereafter, the trial court conducted a lenghthy plea colloquy with Mr. Williams, wherein he of his Boykin rights,[5] including his right to a jury trial or by judge alone, his right to the presumption of innocence, his right to confront his accusers and to call witnesses or present favorable evidence, his privilege against self-incrimination, and the right to appeal his conviction.
The trial court also reviewed with Mr. Williams the possible sentencing ranges for an armed robbery conviction and an obscenity conviction. The trial court further confirmed with Mr. Williams that he understood that if the court were to accept his guilty pleas, he would be sentenced to *1254 35 years at hard labor in the Department of Corrections without benefits on the armed robbery charge, and to three years at hard labor on the obscenity charge, with the sentences ordered to be run concurrently, and with credit for time served on both charges.
During the plea colloquy, when the trial court specifically inquired as to whether Mr. Williams was suffering from any type of physical or mental impairment that would affect his ability to enter into the plea agreement, Mr. Williams responded in the negative. Mr. Williams confirmed that he could read, write and understand the English language. In response to further inquiry by the trial court, Mr. Williams indicated that he was satisfied with his counsel's legal representation and that he had not been forced, threatened, or coerced in any way to accept the plea deal. The trial court established that Mr. Williams understood the timeline for appealing his sentence and/or applying for post-conviction relief, and that he understood his guilty plea could be used to enhance the penalty for any future felony conviction. The trial court confirmed with Mr. Williams that his attorney had reviewed the "waiver of constitutional rights plea of guilty form" with him, that he had initialed each of the provisions on the form, and that it was his signature on the form acknowledging that his rights had been explained to him and that he wished to waive those rights.
Throughout the plea colloquy, Mr. Williams indicated that he understood his rights, that he wished to waive his rights, and that he understood the consequences of his guilty plea, including the sentences that would be imposed in accordance with the plea agreement. Following this detailed exchange with Mr. Williams in open court, the trial court accepted Mr. Williams' guilty pleas as having been knowingly, intelligently, freely and voluntarily made.
On April 14, 2016, Mr. Williams appeared for sentencing, at which time he made an oral motion to withdraw his guilty pleas on the grounds that he was under duress at the time he accepted the plea offer, and that he "did not truly comprehend and understand" the sentence that was agreed to as a part of the plea. When questioned by the trial court regarding what specific aspect of his plea was causing him confusion, Mr. Williams replied that he wanted to "take [his] plea back" because, "at the time [he] couldn't really read" the "paper that [he] was signing for [his] sentence," and "didn't really understand what [he] was signing." Asserting no specific basis for his inability to read or comprehend, and despite the affirmative answers he provided in response to the trial court's prior questioning during the Boykin colloquy, Mr. Williams stated that he did not understand any aspect of the plea agreement, in particular, the sentence that he would receive as a result of the plea.
The following discussion then took place between the trial judge and Mr. Williams:
THE COURT:
What is your understanding what will happen if the Court allows you to withdraw your guilty plea?
THE DEFENDANT:
By losing trial, I would get the max that I supposed to have, the sentence I supposed to have and you would take back what you offered me the first time.
THE COURT:
You know that you are a multiple offender, correct, you have felony convictions?
THE DEFENDANT:
Yes, sir.
THE COURT:
*1255 That if you are convicted at trial [it] would be held against you to enhance your sentence to [sic] essentially you would be looking at the rest of your life in prison.
THE DEFENDANT:
Yes, sir.
THE COURT:
And the sentence that I have indicated to you at the time of your plea that I would give to you was 35 years of hard labor with[out] benefit of probation, parole or suspension of sentence.
THE DEFENDANT:
How long would I have to do that before I would be eligible for parole?
THE COURT:
My job, as I told you, would be to sentence you to 35 years at hard labor without benefit of probation, parole or suspension of sentence and then any type of good time or any other calculation is not made by the Court. That is something that is up to the Department of Corrections.
MS. BOURG:
And Your Honor, just for the record, Mr. Williams asked me the same question. I told him that we do not make good time calculations, it is up to the Department of Corrections. I also told him it is my belief that I would tell him it is my understanding he will do 85 percent because it is a crime of violence. But I did explain we don't make good time calculations or guarantees. It is pleading to 35 and time less than that would be up to them.
THE COURT:
Mr. Williams, you were born what year?
THE DEFENDANT:
'88.
THE COURT:
You are 27 years old and again under the plea that you entered previous in this case back on March the 9th, this Court indicated to you that it would sentence you to 35 years and were this Court were [sic] to allow you to withdraw that plea, you would be looking at potentially life in prison.
THE DEFENDANT:
Yes, sir.
The trial court then denied Mr. Williams' request to withdraw his guilty pleas. In so ruling, the trial judge acknowledged that even though prior to taking the plea Mr. Williams had expressed some reservations, a full Boykin colloquy had taken place and, in his estimation, Mr. Williams understood the plea form, as well as the implications of his guilty plea. The trial judge further explained that if allowed to withdraw the pleas and proceed to trial and found guilty on the felony charge, Mr. Williams would be exposing himself to a virtual life sentence, but that under the plea agreement, he would be sentenced to 35 years imprisonment. Following its denial of Mr. Williams' request to withdraw his plea, the trial court sentenced him to 35 years in the Department of Corrections in accordance with the terms of the plea agreement,
Mr. Williams subsequently filed an application for post-conviction relief on November 20, 2017 seeking an out-of-time appeal. On November 29, 2017, the trial court granted Mr. William's request for an out-of-time appeal and dismissed his application for post-conviction relief, without prejudice. The instant appealed followed.
In his sole assignment of error, Mr. Williams contends that, based on his assertion that he did not fully understand the sentence that was agreed to as a part of the plea agreement, it was an abuse of the trial court's discretion to deny his motion to withdraw his guilty pleas. Mr. Williams'
*1256 competency to proceed to trial was placed at issue early on in these proceedings as evidenced by his prior motion for a competency examination, which he argues demonstrates his inability to understand the sentences or the consequences of his guilty pleas. For the following reasons, based upon our review of the record and the transcript of the hearings, finding no abuse of discretion, we find no error in the trial court's ruling.
LAW AND ANALYSIS
A defendant does not have an absolute right to withdraw a guilty plea. State v. Honeycutt , 41,601 (La. App. 2 Cir. 2/28/07), 953 So.2d 914, 918. Pursuant to La. C.Cr.P. art. 559(A), the trial court has the discretion to permit a defendant to withdraw his guilty plea at any time prior to sentencing. State v. Kron , 07-1024 (La. App. 5 Cir. 3/25/08), 983 So.2d 117, 119, writ denied , 08-0813 (La. 10/24/08), 992 So.2d 1039. However, this discretion cannot be exercised arbitrarily, and an abuse of discretion can be corrected on appeal. State v. Gonzales , 97-767 (La. App. 5 Cir. 1/14/98), 707 So.2d 82, 84. Once a defendant is sentenced, only those pleas that are constitutionally infirm may be withdrawn by appeal or post-conviction relief. State v. Joseph , 14-762 (La. App. 5 Cir. 3/25/15), 169 So.3d 661, 664. A guilty plea is constitutionally infirm if it is not entered freely and voluntarily, if the Boykin colloquy is inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept. State v. McCoil , 05-658 (La. App. 5 Cir. 2/27/06), 924 So.2d 1120, 1124.
As a general rule, a denial of a motion to withdraw a guilty plea will not be reversed on appeal if the record clearly shows that the defendant was informed of his rights and the consequences of his plea, and that the plea was entered voluntarily. State v. Kron , 983 So.2d at 120. Dissatisfaction with a sentence or a mere change of heart or mind by the defendant as to whether he made a good bargain will not ordinarily support allowing the withdrawal of a bargained guilty plea. State v. Green , 03-410 (La. App. 5 Cir. 10/28/03), 860 So.2d 237, 242, writ denied , 03-3228 (La. 3/26/04), 871 So.2d 346.[6] Moreover, where a defendant's misunderstanding of the plea bargain is not induced by or attributed to representations made by the district attorney or the trial court, there are no grounds for withdrawal of the plea. In the absence of fraud, intimidation, or incompetency of counsel, a guilty plea is not made less voluntary or informed by the considered advice of counsel. State v. Joseph , 169 So.3d at 664. A guilty plea also will not be set aside upon a defendant's unfulfilled expectation of gaining release as soon as possible. State v. Perrilloux , 99-1314 (La. App. 5 Cir. 5/17/00), 762 So.2d 198, 203.
Moreover, in Louisiana, a defendant's mental incapacity to proceed exists when, as a result of mental disease or defect, he presently lacks the capacity to understand the proceedings against him or to assist in his defense. La. C.Cr.P. art. 641. See also State v. Pollard , 12-346 (La. App. 5 Cir. 12/18/12), 106 So.3d 1194, 1199, writ denied , 13-0140 (La. 6/21/13), 118 So.3d 408. A defendant in a criminal case is presumed sane and responsible for his actions, and the defendant bears the burden *1257 of proving otherwise. State v. Tranchant , 10-459 (La. App. 5 Cir. 11/23/10), 54 So.3d 730, 734, writ denied , 10-2821 (La. 4/29/11), 62 So.3d 108. The standard of proof is by a preponderance of the evidence, and the defendant must show that it was more probable than not that he lacked mental capacity to enter the guilty plea. Id.
Applying the foregoing legal precepts to the instant case, we find no error in the trial court's ruling denying Mr. Williams' request to withdraw his guilty plea. Specifically, we find that the record on appeal fully supports the trial court's factual determination that Mr. Williams voluntarily entered his guilty pleas with a full understanding of the consequences. Mr. Williams does not allege that the trial court failed to advise him of his constitutional rights, nor does he allege that he was coerced in any way to enter his plea. Rather, Mr. Williams alleges that based solely on his statements to the trial court that he did not understand the sentence or the implications of his guilty plea, which he contends was supported by the fact that he had previously filed a motion for a competency examination, the trial court should have allowed him to withdraw his guilty plea. We disagree.
The record shows that Mr. Williams' competency hearing-wherein he was found competent to proceed to trial-was held on the same day that the trial court, after having engaged in a lengthy plea colloquy with Mr. Williams advising him of his rights, his sentencing exposure, and after having been convinced that he fully understood the nature of the charges against him and the sentences to be imposed in accordance with the plea agreement, accepted Mr. Williams' guilty plea to the charged offenses as being freely and voluntarily made. We find no evidence in the record, other than his bald assertions to the contrary, that would lead us to conclude that Mr. Williams, who had been found competent to proceed to trial only moments before, did not maintain his competency at the time he entered his guilty pleas.[7]
Our review of the jurisprudence further supports our conclusion. In State v. Tranchant , supra , the defendant challenged the validity of his guilty pleas to charges of aggravated rape and aggravated burglary. Id. , 54 So.3d at 732-733. Specifically, the defendant alleged that despite evidence of mental illness and mental retardation, the trial judge made no attempt to determine whether the defendant was able to understand the consequences of his guilty pleas or to inform him that he may have been waiving his plea of not guilty by reason of insanity. Id. at 734. Following a review of the record, this Court found no evidence indicating the defendant's guilty plea was in any way constitutionally infirm. Id. at 733. The record showed that during the plea colloquy, the trial judge advised the defendant of the nature of the charges to which he was pleading guilty, and further advised him of his right to a jury trial, his right to confrontation, and his privilege against self-incrimination. The defendant indicated that he understood these rights and that by pleading guilty, he was waiving those rights. Id. Finding no merit to the defendant's argument that his guilty pleas were invalid, this Court noted *1258 that at the time the defendant sought to withdraw his guilty pleas, he failed to provide any documentation to substantiate his contention that his mental disorders prevented him from entering a free and voluntary plea to the charged offenses. Id. at 734. Further, we noted that the defendant had the opportunity during the plea colloquy to inform the trial court that he did not understand the proceedings against him, but failed to do so, and neither the trial court nor counsel, who observed the defendant at the time of his guilty plea, found any reason to question his ability to follow the court proceedings. Lastly, we noted that the sanity commission had previously found defendant competent to proceed to trial. Accordingly, this Court affirmed his convictions and sentences. Id. at 734-735.
Similarly, in State v. Romious , 14-565 (La. App. 5 Cir. 12/16/14), 167 So.3d 71, 72, the defendant challenged the validity of his guilty pleas to two counts of battery of a police officer on the basis that the trial court failed to ascertain whether he was competent to proceed to enter the pleas. Six months prior to the guilty plea proceedings, a sanity commission was ordered and the defendant was found competent to proceed to trial. On appeal, the defendant argued that it was incumbent upon the trial court to discern that at the time of the plea defendant was competent. Id. at 74. This Court found that the trial court's exchange with the defendant at the time he pled guilty was sufficient to address the defendant's competency. Id. at 74-75. Specifically, before accepting the defendant's guilty plea, the trial court inquired as to his mental state:
I want to be very clear with regard to this area of it, sir, because I know from prior testimony in this court from the competency hearings that we have, that you do suffer from bipolar disorder.
It appears to me you have been, while incarcerated, managed well on your medication. You appear, certainly, to be understanding all of the proceedings here today. I just want to make sure that my impression is, in fact, true that you have been, while incarcerated, been taking your medication regularly?
To this question, the defendant replied, "Yes, I have, Your Honor." Id. at 74-75. Finding no evidence in the record to indicate the defendant's guilty pleas were not knowingly, intelligently, freely, and voluntarily entered into, we affirmed the defendant's convictions and sentences. Id. at 75-76.
In the case sub judice , while Mr. Williams does not specifically challenge the trial court's ruling finding that he was mentally competent to proceed to trial, he argues that merely because he requested a mental examination, the trial court should have concluded that he lacked the capacity to "understand the sentence" and the consequences of his pleading guilty, and thus, abused its discretion in denying his request to withdraw the guilty pleas. After reviewing the record, we find that at the time Mr. Williams entered his guilty pleas-as did the trial courts in both Tranchant and Romious , supra , where the defendants had previously participated in competency hearings and were deemed competent to proceed-the trial court specifically addressed whether any type of mental impairment existed that would affect his capacity to proceed and only after confirming with Mr. Williams that none did, agreed to accept his guilty pleas. Accordingly, we find that Mr. Williams' request for a mental examination does not support his contention that he was unable to understand the sentence that was agreed to as a part of the plea agreement.
We now turn to other similar cases wherein this Court has affirmed the trial *1259 court's denial of a defendant's motion to withdraw a guilty plea prior to sentencing when the defendant purports a lack of understanding of the proceedings or the consequences of a guilty plea. In State v. Joseph , supra , the defendant sought to withdraw his guilty plea to possession of cocaine prior to sentencing alleging that his plea was not knowingly and intelligently made because his counsel had provided erroneous advice about the length of time he would actually serve in prison under the plea agreement. Id. , 169 So.3d at 663. Having determined determined that the defendant's guilty plea was knowingly and intelligently entered into, and that it had gone to great lengths during the plea colloquy to insure that the defendant was aware of and understood the sentence, the trial court denied the defendant's motion to withdraw his plea. Id. In doing so, the trial court explained that the "fact that the defendant may [have been] under a misbelief as to how his time would be calculated [did] not affect" the validity of his plea. Id.
On appeal, this Court found no error in the trial court's ruling noting that throughout the plea colloquy the defendant indicated that he understood his sentencing exposure in connection with his guilty plea, and that both the defendant and his attorney signed the plea form that specifically set forth the terms of his sentence. Id. at 666. Moreover, the record revealed that at no point during the colloquy did the trial judge or the State indicate to the defendant that he would only be serving a percentage of the thirty-month sentence, nor did the defendant ask the trial judge whether he would be eligible for good time credit if he pled guilty. Id. Lastly, this Court held that, under these circumstances, the fact that the defendant thought he would be released earlier was not a basis for withdrawal of his guilty plea, especially in light of the fact that the defendant benefitted substantially from the plea bargain. Id. at 667.
Similarly, in State v. Boston , 14-632 (La. App. 5 Cir. 12/16/14), 167 So.3d 82, 85, writ denied , 15-0155 (La. 1/8/16), 184 So.3d 691, the defendant argued that the trial court erred in refusing to allow him to withdraw his guilty plea to possession of a firearm by a convicted felon on the basis that his plea was not knowingly and intelligently entered into because his trial counsel failed to ascertain and comprehend his multiple offender status, which status remained unclear. On appeal, this Court rejected the defendant's argument because the record revealed that the defendant had been fully informed of his rights and the consequences of his guilty plea. In particular, the record confirmed that the trial court had engaged the defendant in a lengthy plea colloquy wherein he had been specifically advised of his possible sentencing exposure if he proceeded to trial and was convicted, and that, as a fourth felony offender, he was facing potential life imprisonment. The trial court further explained that upon its acceptance of his guilty plea, the defendant would be sentenced to 20 years at hard labor without benefit of probation, parole, or suspension of sentence and that the State would agree not to file a multiple offender bill against him. The record further confirmed that the defendant indicated that he understood his sentencing exposure if he proceeded to trial, as well as the actual sentence that would be imposed, and that he believed that the plea agreement was in his best interest. Having determined on the record that the defendant's guilty plea was freely and voluntarily made, and that the defendant was adequately advised of his Boykin rights, we affirmed the trial court's ruling refusing to allow the defendant to withdraw his guilty plea. Id. at 86-87.
*1260 This Court also affirmed the trial court's denial of the defendant's motion to withdraw her guilty plea prior to sentencing in State v. Green , supra. In Green , pursuant to a plea agreement, the defendant pled guilty to manslaughter in exchange for a 20-year cap on the sentence, and the trial court ordering a pre-sentence investigation ("PSI"). State v. Green , 860 So.2d at 239. During the plea colloquy, the defendant stated on the record that she understood what the 20-year cap meant, but that she was told that if she plea bargained, she would get "like five or six years." The trial judge explained that was not a guarantee, but that "the PSI, with a cap of twenty years," meant her sentence could not be more than 20 years "no matter what." The defendant indicated she understood. Id. at 240. After confirming with the defendant that she had not been promised anything for her guilty plea other than the PSI with a cap of 20 years, the trial judge accepted the defendant's guilty plea, ordered a PSI, and deferred sentencing to a later date. Thereafter, the PSI was completed indicating an appropriate sentencing range for the defendant was 15 to 20 years. The defendant then filed a motion to withdraw her guilty plea, stating that she had pled guilty based upon the advice of her counsel and the understanding that the sentencing range would be between "five to seven years." Id. at 241. The trial court denied the motion. Id. at 242. On appeal, this Court affirmed the trial court's ruling finding that the record showed the defendant had been fully informed of her rights and the consequences of her guilty plea, and that although defense counsel had anticipated a sentencing range of between five and seven years, the trial judge had elicited testimony from the defendant evidencing that she understood there was no guarantee. Id. at 243.
In the instant matter, our review of the trial court record convinces us that despite Mr. Williams' contentions to the contrary-i.e. , that he was unable to read or understand the guilty plea form he signed, and did not truly comprehend or understand the consequences of his sentences-Mr. Williams' guilty plea was knowingly and voluntarily made. The record reflects that Mr. Williams underwent a competency evaluation wherein it was determined that, although he had a history of substance abuse, he fully understood the nature of the proceedings and the charges against him. Once found competent to proceed to trial, the record shows that the trial court conducted a Frye hearing, wherein it was established that Mr. Williams' counsel had made him aware of all of the State's evidence against him, including various audios/videos, and had advised him of the State's plea offer, which, in her professional judgment, was in his best interest. The trial court advised Mr. Williams of his status as a multiple felony offender and that, as such, if convicted at a trial, he would face an enhanced sentencing range of 66 to 198 years imprisonment-a virtual life sentence-without benefits, but that if he pled guilty "today," the State would agree not to file a multiple bill of information against him and the court would agree to impose a sentence of 35 years. When asked if he understood and wanted to proceed to trial, Mr. Williams advised the court that he did understand and that he did not want to go to trial, but would, instead, "take the 35." The record further shows that, prior to accepting Mr. Williams' guilty pleas, the trial court personally addressed Mr. Williams and conducted a lengthy Boykin colloquy with him during which Mr. Williams was advised of his constitutional rights, denied that he was being forced or coerced to enter his guilty pleas, and confirmed that he was satisfied with his counsel's representation.
*1261 Further, we find the record belies Mr. Williams' contention that he had difficulty reading and understanding the guilty plea form and that his plea was made without a full understanding of the sentence that was agreed to as part of the plea agreement. The court appointed forensic experts both agreed that, despite his history of substance abuse, Mr. Williams was able to understand the proceedings and charges imposed against him. Moreover, when specifically asked by the trial court whether he was suffering from any type of physical or mental impairment that would affect his ability to enter into the guilty plea, Mr. Williams responded in the negative. When asked whether he was able to read and understand the English language, Mr. Williams responded affirmatively. The record reflects that the trial court specifically explained to Mr. Williams the sentencing ranges for a conviction of armed robbery and a conviction of obscenity, and that his pleading guilty to a felony charge exposed him to greater penalties as a habitual offender if found guilty of a felony in the future. The record confirms that Mr. Williams indicated he understood that if the court were to accept his guilty pleas, the judge intended to sentence him to 35 years imprisonment in the Department of Corrections, with credit for time served on both counts, without benefits. Mr. Williams confirmed that his counsel had explained the guilty plea form to him and that the initials and signature on the form were his own. Additionally, the guilty plea form, signed by both Mr. Williams and his counsel, specifically set forth that upon acceptance of his guilty plea, Mr. Williams' sentence would be 35 years imprisonment without benefit of probation, parole or suspension of sentence. At no time during the lengthy plea colloquy did Mr. Williams inquire of the court regarding whether he would be eligible for "good time served" if he pled guilty. This question was first raised at the commencement of the sentencing hearing when Mr. Williams requested to withdraw his guilty plea. As set forth hereinabove, the record reflects that at that time, the trial judge again personally addressed Mr. Williams in an attempt to ascertain whether, in fact, Mr. Williams truly did not understand the plea agreement, and explained to him that, at 27 years old, given his sentencing exposure if found guilty at trial, the plea agreement was in his best interest.
We find the record clearly establishes that Mr. Williams was advised of-and that he understood-the sentences that would be imposed by the trial court upon acceptance of his guilty pleas. While Mr. Williams may now be dissatisfied with his sentences, this does not provide a basis for the withdrawal of his guilty pleas. State v. Joseph , 169 So.3d at 667 ; State v. Green , 860 So.2d at 243. Moreover, we find Mr. Williams benefited substantially from the plea agreement, a factor the trial judge obviously considered when evaluating Mr. Williams' request to withdraw his guilty pleas. Id. Under the circumstances presented, we find no abuse of the trial court's discretion in denying Mr. Williams' motion to withdraw his guilty pleas.
ERRORS PATENT REVIEW
We have also reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5 Cir. 1990). Our review reveals no errors that require corrective action.
For the foregoing reasons, we find no error in the trial court's denial of defendants' motion to withdrawal his guilty pleas. Accordingly, his convictions and sentences are affirmed.
*1262 CONVICTIONS AND SENTENCES AFFIRMED

Because Mr. Williams pled guilty, the record does not contain any facts relevant to the charged offenses; however, the bill of information alleges that Mr. Williams robbed Venitra Davis while armed with a firearm (count one), and that, following his arrest but prior to his arraignment, he committed the crime of obscenity by exposing his genitals in the Jefferson Parish Correctional Center (count two).

Counsel for both the State and Mr. Williams stipulated that if Drs. Salcedo and Richoux were called to testify at trial, they would both be accepted as experts in their respective fields and that their testimony and conclusions would be one in the same as documented in their report. Based on the stipulation, the report was admitted into evidence.

The plea offer also included that the trial court would recommend that Mr. Williams be allowed to participate in any available self-help programs during his incarceration, including drug treatment, GED, and job training

What is now commonly referred to as a "Frye hearing" arose out of the case of Missouri v. Frye , 566 U.S. 134, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012), wherein the Supreme Court expanded the protection of the Sixth Amendment right to effective assistance of counsel beyond formal legal proceedings to include plea negotiations. As a result, attorneys are required to communicate to their clients every formal plea offer proposed by the State which may be favorable to the accused. 566 U.S. at 145, 132 S.Ct. 1399. Subsequent jurisprudence has interpreted this expansion to include the duties established by the Supreme Court in Strickland and Padilla , which include the duty to advise the defendant as to the advantages and disadvantages of a plea offer after making reasonable investigations thereof. State v. Surus , 13-903 (La. App. 3 Cir. 4/2/14), 135 So.3d 1236, 1245, writ denied , 14-0882 (La. 2/6/15), 157 So.3d 1136 (citing Strickland v. Washington , 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984) ; Padilla v. Kentucky , 559 U.S. 356, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010) ). The purpose of a Frye hearing is to make a record of the fulfilment of defense counsel's duty to communicate favorable plea offers and to effectively assist the defendant in deciding whether to accept the State's offer or proceed to trial.

Under Boykin v. Alabama , 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the decision to plead guilty will not be considered free or voluntary unless, at the very least, the defendant had been advised of his constitutional rights against self-incrimination, to a trial by jury, and to confront his accusers. State v. Domino , 10-661 (La. App. 5 Cir. 1/25/11), 60 So.3d 659, 663.

"Reasons supporting the withdrawal of a guilty plea would ordinarily include factors bearing on whether the guilty plea was voluntarily or intelligently made, such as a breach of a plea bargain inducement, misleading advice of counsel, strength of the evidence of actual guilt and the like." Green , 860 So.2d at 242 (citing State v. Cook , 32,110 (La. App. 2 Cir. 6/16/99), 742 So.2d 912, 919-920 ).

We note that, although Mr. Williams states in his brief that he was under "duress" at the time he entered his guilty pleas, other than his non-specific argument that he lacked understanding of his sentences, he failed to further elaborate or specify a source of this alleged "duress." For the reasons discussed supra , based upon our review of the record below, we find no indication that Mr. Williams was under any sort of duress that would lead us to conclude that his guilty pleas were not freely or voluntarily made.