NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-94

STATE OF LOUISIANA

VERSUS

DAMARI JENNINGS

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR-143443
HONORABLE DAVID M. SMITH, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Jonathan W. Perry, Judges.

REMANDED WITH INSTRUCTIONS.

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Damari Jennings**

**Damari Jennings**
**Louisiana State Prison**
**628346 Pine - 2**
**Angola, LA 70712**
**IN PROPER PERSON**

**Keith A. Stutes**
**District Attorney**
**Alan P. Haney**
**Assistant District Attorney**
**Post Office Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**PERRET, Judge.**

This appeal arises from a "best interest" plea made by Defendant, Damari Jennings, to the reduced offenses of aggravated battery and second degree murder. Defendant appeals and asserts that those pleas should be vacated or, alternatively, that this court should remand for an evidentiary hearing regarding those pleas. We agree and remand this case with instructions to the trial court for an evidentiary hearing.

**FACTUAL AND PROCEDURAL BACKGROUND:**

Defendant, Damari Jennings, was charged by two separate grand jury indictments. In the bill of indictment in docket number 143443, appellate number 19-94, Defendant was charged with attempted second degree murder of Tano Gentile on August 8, 2013, a violation of La.R.S. 14:30.1 and 14:27. In the bill of indictment in docket number 143444, appellate number 19-95, Defendant was charged with the first degree murder of Connie Burch on August 18, 2013, a violation of La.R.S. 14:30.

Defendant was fifteen at the time he was initially charged. Pursuant to La.Ch.Code art. 305, Defendant became subject to the jurisdiction of the adult court for both offenses once the grand jury returned the indictments. Defendant, at age sixteen, entered a guilty plea to an amended charge of aggravated battery, a violation of La.R.S. 14:34, in docket number 143444, appellate number 19-94, and an amended charge of second degree murder, a violation of La.R.S. 14:30.1, in docket number 143444, appellate docket number 19-95.[1] According to the factual basis submitted by the State at the plea proceeding, there were eyewitnesses to

---

[1] Despite Defendant's plea to lesser and included offenses, the adult court retained jurisdiction pursuant to La.Ch.Code art. 305(D).

both shootings, and the murder weapons used in both offenses were found in Defendant's bedroom.

The trial court sentenced Defendant to an agreed upon sentence of ten years at hard labor, with one year to be served without the benefit of parole, probation, or suspension of sentence, for aggravated battery. For second degree murder, Defendant was sentenced to an agreed upon sentence of life in prison with a stipulation that he would be eligible for parole in accordance with La.R.S. 15:574.4(E).[2] The sentences were ordered to run concurrently.

On February 18, 2016, almost a year and a half after he was sentenced, Defendant filed a post-conviction relief application for an out-of-time appeal. By handwritten notation on the writ application, the trial court granted the out-of-time appeal. Thereafter, on July 19, 2016, the Louisiana Appellate Project notified the district court that it had been assigned to handle the appeal. After a year and a half of various motions, on December 11, 2018, Defendant's counsel submitted a "Motion for Clerk of Court to Process Out of Time Appeal Without Need for a Further Hearing and to Forward Record with the Third Circuit Court of Appeals." The trial court granted the motion that same date.

On March 1, 2019, appellate counsel filed a brief in both appellate docket numbers pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), seeking to withdraw from the cases because of the alleged lack of non-frivolous issues for review. In conducting its review of the case, this court noticed potential issues that should be briefed by appellate counsel, and therefore, issued orders in both appellate docket numbers, ordering appellate counsel to brief certain issues.

---

[2] At the time Defendant's offense was committed and at the time of his plea, La.R.S. 15:574.4(E) was the applicable provision. Since that time, La.R.S. 15:574.4 has been amended.

In both appellate docket numbers, this court ordered Defendant to file a brief addressing whether Defendant's pleas should be considered "best interest" pleas pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160 (1970) and, if considered "best interest" pleas, whether Defendant's pleas represent a voluntary and intelligent choice considering the strength of the factual basis and the other circumstances of the pleas. Additionally, in appellate docket number 19-94, this court ordered appellate counsel to address the issue of whether the imposition of one year without benefit of parole, probation, or suspension of sentence for aggravated battery was authorized by La.R.S. 14:34(B). In appellate docket number 19-95, this court ordered appellate counsel to address the concerns raised in Defendant's pro se letter file-date stamped January 9, 2017, particularly Defendant's misunderstanding as to when he would get out of prison and whether that misunderstanding impacted the voluntariness of Defendant's plea to second degree murder.

Appellate counsel filed a motion to consolidate the cases for briefing purposes only, and this court granted the motion. Because the issues in both docket numbers are so intertwined, we will address all issues together.

On appeal, Defendant alleges that his plea, allegedly a "best interest" or *Alford* plea, was entered without the trial court first ascertaining that a factual basis existed to support the plea; that the trial court erred in ordering one year of his aggravated battery sentence be served without the benefit of parole, probation, or suspension of sentence; and that he was denied effective assistance of counsel before, during, and after due proceedings were held. For the following reasons, we remand the case to the trial court for an evidentiary hearing on the factual basis

3

supporting the pleas, as well as whether those pleas were knowingly, intelligently, and voluntarily entered based on the circumstances.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find an error patent involving the sentence imposed for aggravated battery. However, this error patent has been assigned as error and will be discussed in Assignment of Error Two.

**ASSIGNMENT OF ERROR ONE:**

In his first assignment of error, both through appellate counsel and pro se, Defendant asserts that the trial court erred in allowing him to enter "best interest" pleas without first ascertaining a sufficient factual basis and determining that Defendant made an intelligent and voluntary choice. Defendant, pro se, more specifically asserts, that his plea is defective because his attorney's advice to plead guilty was unreasonable considering his innocence. Additionally, considering the seriousness of his offense, he asserts that he should not have been *Boykinized* during a mass *Boykinzation*.

Considering Defendant's argument on appeal, we first note that the absence of a formal motion to withdraw a guilty plea does not prevent this court from setting aside a constitutionally infirm plea. *State v. Dixon*, 449 So.2d 463 (La.1984); *State v. Jordan*, 98-101 (La.App. 3 Cir. 6/3/98), 716 So.2d 36. Additionally, in his application for post-conviction relief for an out-of-time appeal and in a letter to the trial court, Defendant made known to the trial court his belief that his pleas were unconstitutional as well as his desire to withdraw the pleas.

4

Thus, the constitutionality of Defendant's pleas is properly before this court for review.

Defendant was sixteen years old, facing life in prison, and entered his guilty pleas during a mass *Boykinization* proceeding. After advising Defendant of his constitutional rights, the trial court asked Defendant if he still wanted to plead guilty to second degree murder. The following colloquy took place:

> THE COURT: . . . . All right, sir. You are asking me to accept your guilty plea to second degree murder as a juvenile; is that right, sir?

MR JENNINGS:

A     Yes, sir.

> THE COURT: Do you understand that to convict you at trial the State of Louisiana would have to prove that in Lafayette Parish you did commit a homicide with the specific intent to kill or cause great bodily harm? Do you understand that?

MR. JENNINGS:

A     Yes, sir.

> THE COURT: And do you further understand that if I accept your plea, you will stand convicted of this crime and as a result you would be sentenced to a term of imprisonment for life with parole considerations, according to a particular law in Louisiana which is 15:574.4; is that right, sir?

MR. JENNINGS:

A     Yes, sir.

> THE COURT: Tell me what you did.

MR. JENNINGS:

A     Nothing.

> THE COURT: Well, sir, I know Mr. Hamilton is not here but somebody has to give me a factual basis if he's going to say nothing.

5

Sir, you are pleading guilty to this charge. Is there a reason why you won't say anything about it?

MR. JENNINGS:

A    No, sir.

THE COURT: Then why don't you tell me what you did?

MR. JENNINGS:

A    I was accused of shooting two people.

THE COURT: All right, sir. And did you kill someone?

MR. JENNINGS:

A    No, sir.

THE COURT: No, sir? All right, sir. Why are you pleading guilty, young man?

MR. JENNINGS:

A.    It's the best option.

THE COURT: Explain that to me, please.

MR. JENNINGS:

A.    (No response)

THE COURT: What do you mean? What do you mean?

MR. JENNINGS:

A.    They found evidence but I still didn't do it, but they found evidence.

Defense counsel subsequently informed the court that Defendant's plea to second degree murder was considered a "best interest plea" due to the "parole eligibility" offer. The court resumed its questioning of Defendant as follows:

THE COURT: Mr. Jennings, you choose not to contest those facts; is that what you're telling me?

6

MR. JENNINGS:

A. Could you repeat that again?

    THE COURT: Are you choosing not to contest those facts, to object to those facts?

MR. JENNINGS:

A.    No, sir.

    THE COURT: You do now understand after what was just said, what the State would attempt, what evidence the State would present in an attempt to convict you at trial. Do you understand that?

MR. JENNINGS:

A.    Yes, sir.

    THE COURT: Do you also understand or are you telling me that you are choosing not to contest those facts because you believe that the State of Louisiana very well may convict you?

MR. JENNINGS:

A. Yes, sir.

    BY THE COURT: And is that the reason why you want to plead guilty to that charge today?

MR. JENNINGS:

A.    Yes, sir.

Later, when taking Defendant's plea to aggravated battery, the following colloquy took place:

    THE COURT: After telling you all of that and everything else I've told you today, do you still want to plead guilty to aggravated battery?

MR. JENNINGS:

A.    Yes, sir.

    THE COURT: Is your position the same, that you do not want to contest the facts or to make any other statement?

7

MR. JENNINGS:

A.      Right.

According to the minutes, Defendant entered a plea of no contest to aggravated battery and a plea of guilty to second degree murder. However, after reviewing the plea colloquy, we conclude that Defendant pled guilty pursuant to *Alford*, 400 U.S. 25. An "*Alford* plea" "is one in which the defendant pled guilty while maintaining his innocence." *State v. J.S.*, 10-1233, p. 2 (La.App. 3 Cir. 5/11/11), 63 So.3d 1185, 1187 (quoting *State v. Stevenson*, 45,371, pp. 4-5 (La.App. 2 Cir. 6/23/10) 41 So.3d 1273, 1276). Defendant clearly maintained his innocence when the trial court accepted his plea to second degree murder. Although the same extensive colloquy was not repeated when Defendant entered his plea to aggravated battery, Defendant's agreement with the trial court that his position was the same indicates that Defendant also maintained his innocence as to aggravated battery. Additionally, the State does not dispute that Defendant's pleas were "best interest" pleas. Rather, as will be discussed, the State asserts that the factual basis for the pleas was sufficient.

*Factual Basis for the Pleas*

Before the trial court accepted Defendant's *Alford* pleas, appellate counsel contends that the State should have set forth a strong factual basis of Defendant's guilt. Additionally, appellate counsel contends that the trial court should have made sure the pleas were being entered knowingly and intelligently. In response, the State argues that the uncontested facts are sufficient to sustain both convictions and therefore, are sufficient to form a factual basis for Defendant's pleas. Furthermore, the State contends that Defendant agreed the evidence was sufficient to convict him.

"[T]he standard under *Alford* is whether the strength of the factual basis, coupled with the other circumstances of the plea, reflects that the plea was a voluntary and intelligent choice among the alternatives available to Defendant."

*State v. Fregia*, 12-646, pp. 6-7 (La.App. 3 Cir. 12/5/12), 105 So.3d 999, 1004.

> In *Alford,* the Supreme Court ruled that a defendant may plead guilty, without forgoing his protestations of innocence, if "the plea represents a voluntary and intelligent choice among the alternative courses of action open to defendant[,] . . . especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage." *Id.,* 400 U.S. at 31, 91 S.Ct. at 164; *State v. McCoil,* 2005–658 (La.App. 5th Cir.02/27/06), 924 So.2d 1120. In a case involving an *Alford* plea, the record must contain "strong evidence of actual guilt." *Id.,* 400 U.S. at 38, 91 S.Ct. at 167; *State v. McCoil, supra;*

> *State v. Stevenson,* 45,371, pp. 4–5 (La.App. 2 Cir. 6/23/10), 41 So.3d 1273, 1277.

> Furthermore, when a defendant claims innocence and still makes an *Alford* plea, the trial court is put on notice that a substantial basis of guilt must be placed into the record. *State v. Villarreal,* 99–827 (La.App. 5 Cir. 2/16/00), 759 So.2d 126, 129, *writ denied,* 00–1175 (La.3/16/01), 786 So.2d 745.

*J.S.*, 63 So.3d at 1187-88 (alterations in original).

In the present case, before accepting Defendant's plea to second degree murder, the trial court advised Defendant that the State would have to prove he committed a homicide with the specific intent to kill or inflict great bodily harm.[3] Prior to entering his guilty plea, the State entered the following factual basis for second degree murder:

> MR. COLBERT [(State)]: Yes, sir, Your Honor. At trial the State of Louisiana would prove that on or about August 18, 2013, Damari Jennings did commit an act of first degree murder of one

---

[3] Second degree murder is defined in La.R.S. 14:30.1 as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm[.]"

9

Connie Burch in violation of the provisions of Louisiana Revised Statute 14:30. Do you want to know the evidence, Your Honor.

THE COURT: Well, sir, I know what the bill of information or the indictment says but I need more than just the charge. I need a factual basis before I can accept a plea or even a best interest plea.

MR. MCCANN [(defense counsel)]: There was an eye witness and there was a murder weapon found in his bedroom.

MR. COLBERT: And forensics came back from the Acadiana Crime Lab on the murder weapon which was found in his room. At the crime there was a 40 caliber cartridge that was found right next to the victim and that when they found the gun in his room, it came back as positive, having been fired from the gun which he was found in possession of.

THE COURT: Any additional forensics on the weapon?

MR. COLBERT: No, sir.

THE COURT: None was done or - -

MR. MCCANN: None was found. There were no forensics done that would have excluded him but the eye witness puts him there. And under those circumstances and under the circumstances of the parole offer, the parole eligibility, it is considered to be a best interest plea.

. . . .

MR. MCCANN: Judge, let me put some additional information in the record to make the Court feel better and/or other purposes. The circumstances were similar. There was a second eye witness that saw the other shooting. That weapon was a 25 caliber and it was also found with the same search warrant in Mr. Jennings' bedroom. So, the 404B inclusive of the eye witness of the homicide would have made defending this case very difficult.

Later, when Defendant pled to aggravated battery, the trial court informed Defendant that the State would have to prove he committed a battery on another person while armed with a dangerous weapon.[4] No additional factual basis was given for this charge.

---

[4] Aggravated battery is defined in La.R.S. 14:34 as "a battery committed with a dangerous weapon."

10

On appeal, the State makes additional claims regarding the factual basis for the pleas, such as "the victim in the aggravated battery case picked the defendant out of a lineup[,]" and that in the second degree murder case "a juvenile witness told police that he witnessed the defendant shoot the victim (who was living at Faith House) and then take her medication and cellular phone off of her dead body." However, these assertions are not supported by the record on appeal, thus, are not properly before this court. *See* La.Code Civ.P. art. 2164; *State v. Hoffpauir*, 17-416 (La.App. 3 Cir. 11/2/17), 232 So.3d 670.

Instead, reviewing the factual basis presented to the trial court prior to Defendant's plea, we find that the evidence established that Defendant was involved in two shootings—eyewitnesses placed him at the shootings, and the guns used in the shootings were found in his room. However, because nothing in the presentation of facts indicated what the eyewitnesses saw, the extent of Defendant's involvement is unclear. Assuming Defendant was the shooter, the factual basis fails to establish that Defendant had the specific intent to kill or inflict great bodily harm on the victim of the second degree murder and failed to establish Defendant's intentional use of force or violence on the victim of the aggravated battery.

The supreme court in *State v. Orman,* 97-2089, pp. 1-2 (La.1/9/98), 704 So.2d 245, 245, explained the test for determining whether the factual basis is sufficient:

> [T]he standard under *Alford* is not whether the state may prevail at trial by establishing the essential elements of the crime beyond a reasonable doubt and negating all possible defenses, but rather whether the strength of the factual basis, coupled with the other circumstances of the plea, reflect that the plea "represents a voluntary and intelligent choice among the alternative[s]." *Id.* 400 U.S. at 31, 91 S.Ct. at 164.

11

Therefore, in addition to the factual basis already discussed, this court must evaluate the other circumstances surrounding Defendant's pleas.

*Circumstances Surrounding the Pleas*

As previously stated, Defendant was sixteen when he entered the pleas. Defendant maintained his innocence, but stated he was pleading guilty because it was in his best interest to do so. Although Defendant received a benefit from his plea to aggravated battery (the charge was reduced from attempted second degree murder), the sentence for aggravated battery was ordered to run concurrently with Defendant's life sentence for second degree murder. Thus, Defendant's plea to the reduced charge of aggravated battery did not benefit Defendant for practical purposes, and he received the maximum imprisonment permitted for aggravated battery.[5]

Moreover, Defendant did not receive a significant benefit from his plea to second degree murder. Defendant was originally charged with first degree murder but could not receive the death penalty since he was under eighteen at the time the offense was committed. *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183 (2005). Additionally, Defendant's age prohibited a mandatory life sentence without the possibility of parole. *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012). Thus, Defendant's sentence would have been the same under either first degree murder or second degree murder.

Furthermore, as part of Defendant's plea, the Defendant would be eligible for parole pursuant to La.R.S. 15:574.4(E). The State also agreed that if a hearing was held in accordance with the mandates of *Miller v. Alabama*, sufficient

---

[5] La.R.S. 14:34 (B) provides: "Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both."

evidence would be introduced to make Defendant eligible for parole in the future. However, at the time of Defendant's plea and at the time Defendant committed the offense at issue, La.Code Crim.P. art. 878.1 required a parole eligibility hearing to be held for any defendant convicted of first or second degree murder committed when he was under the age of eighteen to determine whether the defendant would be eligible for parole under La.R.S. 15:574.4(E). Article 878.1(D) also provided that the denial of parole eligibility should normally be reserved for the worst offenders and the worst cases. Thus, even if Defendant would have gone to trial and been convicted of either first or second degree murder, Defendant would have been sentenced to life imprisonment and had a *Miller* hearing to determine his parole eligibility. In short, parole eligibility was a possibility, unless Defendant was in the category of the worst type of offender and this murder was one of the worst cases.

In addition to Defendant's young age, protestations of innocence, and the minimal benefit he received from pleading guilty, Defendant asserts that his guilty pleas were unconstitutional. As discussed, Defendant filed a pro se brief in this court alleging the unconstitutionality of his pleas. Additionally, in his Uniform Application for Post-Conviction Relief (PCR application) filed in the trial court, Defendant sought an out-of-time appeal and made various claims that his pleas were unconstitutional. Most notably, Defendant submitted a letter to the trial court alleging that he was mis-informed as to the time he would serve in prison. The letter states in pertinent part:

> The purpose of me personally writing you is to fully inform you that my Post Conviction relief was granted on March 3, 2016, and I am asking can you strip me of this plea deal. The plea deal was originally life and a 10 year sentence. Unfortunately, I took the deal at the age of 16. I really didn't have any understanding of the law.

13

My state appointed lawyer told me I will get out at the age of 21. He scared me told me if I don't take the deal I could spend the rest of my life in prison. He played mind games with me. I was 15 years old for 1 month and 1 week exact before I became incarcerated. My mind wasn't fully develope [sic], I was easily influenced by other humans. Over my years of incarceration I grew older[;] I covered goals that I set for myself (G.E.D., graduated the youthful offender program, completed 8 different classes, A pride member, over 2 years write-up free) I start a welding trade the beginning of next year. I believe I have the privilege to be relocated back into society and you have the power to give me another chance at my life. This isn't a place for humans to be caged up like animals. It took me a long time to figure that out, but I couldn't realise [sic] because I was never in a position like this. This is not what I want, so im [sic] asking for you to put it in your heart to give me another chance at my life, that I barely got the privilege to live.

In response, the State asserts this argument is without merit because the trial court informed Defendant that he would "be sentenced to a term of imprisonment for life with parole considerations, according to a particular law in Louisiana which is [La.R.S.] 15:574.4[.]" Defendant indicated that he understood. Later, the trial court and Defendant again discussed the sentence imposed for second degree murder:

> THE COURT: All right. Pursuant to that agreement I hereby sentence you to serve life in prison. However, the State of Louisiana and your defense agree that if evidence was presented at a particular hearing called a Miller Hearing, that there would be sufficient evidence to make you available for parole at some time in the future. Do you understand that?

MR. JENNINGS:

A.    Yes, sir.

> THE COURT: Is that what you expected to happen today?

MR. JENNINGS:
A.    Yes, sir.

Although Defendant's case was set for hearing several times after the letter was submitted, each hearing was continued. Thus, the record contains no ruling on

14

the assertions made in Defendant's letter. We note the following jurisprudence regarding misunderstandings as to plea agreements:

> Dissatisfaction with a sentence or a mere change of heart or mind by the defendant as to whether he made a good bargain will not ordinarily support allowing the withdrawal of a bargained guilty plea. State v. Green, 03-410 (La. App. 5 Cir. 10/28/03), 860 So.2d 237, 242, writ denied, 03-3228 (La. 3/26/04), 871 So.2d 346. Moreover, where a defendant's misunderstanding of the plea bargain is not induced by or attributed to representations made by the district attorney or the trial court, there are no grounds for withdrawal of the plea. In the absence of fraud, intimidation, or incompetency of counsel, a guilty plea is not made less voluntary or informed by the considered advice of counsel. Joseph, 169 So.3d at 664.

*State v. Johnson*, 18-294, p. 4 (La.App. 5 Cir. 1/16/19), 264 So.3d 593, 597.

In his letter to the trial court, Defendant claimed he was told by his trial counsel that he would get out of prison at age twenty-one. Although this misunderstanding alone may not justify withdrawal of Defendant's pleas, as will be discussed below, the trial court's lack of explanation of a "life sentence" as opposed to a "juvenile life" sentence may have led to Defendant's confusion. Furthermore, Defendant's misunderstanding should be considered along with the strength of the State's factual basis to evaluate the voluntariness of Defendant's pleas.

While, it is clear from the above colloquy that the trial court informed Defendant that if it accepted Defendant's plea, Defendant would be sentenced to a "term of imprisonment for life with parole considerations . . . .[,]" "juvenile life" is a common term for a juvenile's sentence until age twenty-one. *See State in the Interest of A.F.*, 11-1437, p. 7 (La.App. 4 Cir. 2/15/12) (unpublished opinion)[6] and *State v. S.D.*, 16-1953, p. 1 (La. 11/15/16), 205 So.3d 907, 908 (Knoll, J., concurring). Additionally, the trial court initially began his conversation with

---

[6]This case is cited at 2012 WL 4754159.

Defendant at the plea hearing by stating, "You are asking me to accept your guilty plea to second degree murder **as a juvenile**; is that right, sir?" (emphasis added).

Considering the above, it is possible Defendant thought the trial court's reference to "life" meant juvenile life. Although this misunderstanding alone may not justify withdrawal of Defendant's pleas, the trial court's lack of explanation of a "life sentence" as opposed to a "juvenile life" sentence may have led to Defendant's confusion. Furthermore, Defendant's misunderstanding is considered along with the strength of the State's factual basis to evaluate the voluntariness of Defendant's pleas.

Additionally, Defendant, pro se, contends he should have been *Boykinized* alone instead of alongside several other people who were charged with less serious offenses than Defendant. While a mass *Boykinization* does not in and of itself render a guilty plea unconstitutional, it is an appropriate factor in determining whether the plea is valid under the circumstances of the case. *See State v. Richard*, 00-659 (La. 9/29/00), 769 So.2d 1177.

Defendant was *Boykinized* along with five other people ranging in age from seventeen to fifty. As it did with the other participants, the trial court questioned Defendant personally as to his competency to proceed:

BY THE COURT:

Q. MR. JENNINGS, what's your name and date of birth, please?

A. DAMARI JENNINGS, 7/14/98.
Q. How old are you?

A. Sixteen.

Q. What's your Social Security Number?

A. 1071.

16

Q.     How far did you go in school?

A.     GED.

Q.     Can you read, write, and understand English?

A.     Yes, sir.

Q.     Are you under the influence of drugs or alcohol or do you suffer from a mental defect or disability which prevents you from understanding what's said to you in English?

A.     No, sir.

Q.     Did you understand everything I've said to you today?

A.     Yes, sir.

Q.     I have a plea form in my hand that has your signature. Did you sign this form?

A.     Yes, sir.

Q.     Were you able to read and understand the form when you went over it with your lawyer?

A.     Yes, sir.

Q.     I find you competent to proceed.

After questioning each of the defendants individually regarding their competency, the trial court questioned the defendants as a group as to the constitutional rights they were waiving by pleading guilty. The trial court then, again, questioned each of the defendants individually regarding the specific offenses to which each was pleading and regarding each of their plea agreements. The trial court's colloquy with Defendant as to the specifics of his plea agreements was set forth above. In addition to the colloquy with the trial court, Defendant signed a written plea form as to both offenses.

*Analysis of Pleas*

As stated previously, the strength of the factual basis given by the State for Defendant's guilty pleas should be evaluated with the other circumstances of Defendant's pleas to determine whether Defendant's pleas represent a voluntary and intelligent choice among the alternatives available to him. *Fregia*, 105 So.3d 999. The factual basis presented by the State established only that an eyewitness placed Defendant at the two shootings and that the guns used in the shootings were found in his bedroom. It is not clear, however, if Defendant was the actual shooter, if the second degree murder was committed with specific intent to kill or to inflict great bodily harm, or if the aggravated battery was committed with the intentional use of force or violence on the victim. Thus, the factual basis presented by the State was not substantial. When the factual basis is coupled with the other circumstances of Defendant's pleas—Defendant's young age, the trial judge's scant questioning of Defendant as to his competency, the minimal benefit Defendant received from his pleas, and Defendant's assertion that he believed he would be released at age twenty-one—we conclude that there is merit to Defendant's assertion that the record does not support a finding that his pleas were a voluntary and intelligent choice among the alternatives available to him.

In *Fregia*, this court stated:

> Ordinarily, in the case of an *Alford* plea, when a defendant alleges that the record fails to contain a sufficient factual basis for his plea, the defendant has either filed a motion to set aside the guilty plea because it was not intelligently or knowingly made, or the defendant raises the constitutionality of the plea on appeal for the same reason. In such cases, if this court finds merit in the defendant's assertions, the remedy, depending on the circumstances of the case, is to either remand for a hearing to allow the State the opportunity to present a sufficient factual basis or to vacate the guilty plea, conviction, and sentence and remand the matter.

18

*Fregia*, 105 So.3d at 1003.

In *State v. Johnston*, 16-1460 (La. 6/5/17), 221 So.3d 46, the supreme court remanded the case for an evidentiary hearing to determine whether the juvenile knowingly and voluntarily entered a guilty plea to the reduced charge of attempted aggravated rape. The defendant argued that his guilty plea was not intelligently entered because he was unaware that a juvenile non-homicide offender could no longer be sentenced to life without parole eligibility. The supreme court noted that the defendant may have been misinformed as to his sentencing exposure. Remanding the matter for an evidentiary hearing, the supreme court stated, "Because the precise sentencing advisements that defendant received remain unclear from the materials before us, we . . . remand to the district court for an evidentiary hearing on this issue." *Id*. When the case appeared before the supreme court after remand, the supreme court stated:

> After remand, it is clear that defendant was misinformed of his sentencing exposure, i.e. he was told that he faced a sentence of life imprisonment without parole eligibility. We find that misinformation impeded his ability to make a voluntary and intelligent choice among the alternatives. Therefore, we grant the application to remand to the district court with instructions that defendant be given the opportunity to withdraw his guilty plea.

*State v. Johnston*, 18-604 (La. 8/31/18), 251 So.3d 400.

Additionally, in *Fregia*, 105 So.3d 999, this court likewise remanded the case for an evidentiary hearing. In *Fregia*, the defendant did not allege that his plea was involuntary or request that his plea be withdrawn, but asserted that the trial court failed to ascertain a significant basis for the plea:

> The trial court did not request, nor was it provided with, any specific factual information regarding the offense of indecent behavior with a juvenile. The only information regarding the offense put into the record was essentially a recitation of the statute under which Defendant was charged. . . .

19

> Except for the victims' unverified statements attached to a discovery response, the record contains nothing pertaining to the facts of the case which would serve as substantial evidence of Defendant's guilt. *See State v. Graig,* 10–854 (La.App. 5 Cir. 5/24/11), 66 So.3d 60, in which the fifth circuit noted the trial court failed to recite specific evidence of defendant's guilt following an *Alford* plea but stated only that a factual basis existed. However, a suppression hearing transcript which was in the record revealed a sufficient factual basis for the *Alford* plea. At the suppression hearing, a witness testified he saw the defendant shoot the victim and then run away.
>
> Following the rationale in our decision in [*State v.*] *Guilbeau* [11-99 (La.App. 3 Cir. 6/22/11), 71 So.3d 1020]*,* we remand this matter for a hearing to allow the State the opportunity to present a factual basis for the plea. In *State v. Bowie,* 96–2987 (La.1/31/97), 687 So.2d 369, the state supreme court implicitly approved this procedure as it granted writs to provide guidance regarding the new *Boykin* hearing but declined to exercise its supervisory authority further.

*Id.* at 1004–05.  In its decree, the *Fregia* court remanded the case for an evidentiary hearing, but also ordered the trial court "to prepare and lodge with this Court an appellate record containing the transcript of the above-referenced evidentiary hearing[.]" *Id.* at 1007.  Thereafter, "the State and Defendant will be given the opportunity to file briefs should either party wish to raise any issues arising from the hearing. . . .  In the absence of such an appeal, this court will affirm the conviction." *Id.*

Similarly, this court in *State v. G.T., Jr.*, 10-1469 (La.App. 3 Cir. 6/15/11), 71 So.3d 394, 406, remanded the case for an evidentiary hearing on the voluntariness of Defendant's no contest plea to rape and "to allow him to withdraw his plea if the trial court determines it was involuntary or otherwise infirm."  The trial court was ordered "to determine if the inaccurate advice Defendant received regarding a majority verdict and/or the untimely notification of the sex offender registration and notification requirements and/or the court's failure to correctly

advise Defendant regarding the length of time he would have to register vitiated the voluntariness of his plea." *Id*. at 407.

As in *Fregia*, the transcript in *G.T.* was to be lodged with the appellate court and both parties permitted to raise any issues arising from the hearing. Judge Thibodeaux also concurred to recognize his reliance "on the procedure utilized in this case based on *State v. Clark,* 97–1064 (La.App. 3 Cir. 4/1/98), 711 So.2d 738 and *State v. Fuslier,* 06–1438 (La.App. 3 Cir. 4/4/07), 954 So.2d 866." *Id*. at 407 (Thibodeaux, Chief J., concurring). Judge Thibodeaux notes that those cases "mandate a remand to the trial court to conduct an evidentiary hearing to determine the voluntariness of a plea without conditionally affirming the defendant's conviction and sentence." *Id*.

Based on the facts of this case and in accordance with *Fregia* and *G.T.*, we remand this case to the trial court with instructions to conduct an evidentiary hearing within thirty days of the date of this opinion to allow the State the opportunity to present a sufficient factual basis for the offenses. The trial court is also instructed to explain to Defendant the life sentence for second degree murder, including that it must be served at hard labor. Thereafter, the trial court is instructed to determine whether Defendant's pleas were entered knowingly, intelligently, and voluntarily based on the circumstances. Then, the trial court is ordered to prepare and lodge an appellate record with this court that contains the transcript of the above-referenced evidentiary hearing within ten days of the hearing. Once the record is lodged with this court, the State and Defendant will be given the opportunity to file briefs should either party wish to raise any issue arising from the hearing.

**ASSIGNMENT OF ERROR TWO:**

In this assignment, Defendant asserts that the trial court erred in ordering one year of his sentence for aggravated battery to be served without benefit of parole, probation, or suspension of sentence because the condition triggering the application of the requirement, that at least one year of the sentence be served without benefits, is not present in this case. *See* La.R.S. 14:34(B). The State also concedes the error in Defendant's sentence for aggravated battery. However, because this court remands the case for an evidentiary hearing, the sentencing error is pretermitted.

**PRO SE ASSIGNMENT OF ERROR TWO:**

In this assignment, Defendant alleges that his trial counsel was ineffective for failing to adequately investigate the charges against him and for failing to interview witnesses. Because we remand this case for an evidentiary hearing, a discussion of this assignment of error is pretermitted and may be addressed when the case returns to this court.

**CONCLUSION:**

Based on the foregoing, we remand this case to the trial court with instructions to conduct an evidentiary hearing within thirty days of the date of this opinion to allow the State the opportunity to present a sufficient factual basis for the offenses. The trial court is also instructed to explain to Defendant the life sentence for second degree murder, including that it must be served at hard labor. Thereafter, the trial court is instructed to determine whether Defendant's pleas were entered knowingly, intelligently, and voluntarily based on the circumstances. Then, the trial court is ordered to prepare and lodge an appellate record with this court that contains the transcript of the above-referenced evidentiary hearing

within ten days of the hearing.  Once the record is lodged with this court, the State and Defendant will be given the opportunity to file briefs should either party wish to raise any issue arising from the hearing.  Defendant's additional assignments of error are pretermitted.

**REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.