704 So.2d 300 (1997)
STATE of Louisiana
v.
Jerry A. SCHAEFER.
No. 97-KA-465.
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 1997.
*301 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Asst. District Attorney, Gretna, for plaintiff-appellee.
Linda Davis-Short, Louisiana Appellate Project, Gretna, for defendant-appellant.
Before GAUDIN, BOWES and DUFRESNE, JJ.
GAUDIN, Judge.
On January 14, 1997, a jury in the 24th Judicial District Court found Jerry A. Schaefer guilty of attempted carjacking and attempted second degree kidnapping. He was ultimately sentenced on April 9, 1997 as a fourth felony offender to 20 years at hard labor for attempted carjacking, LSA-R.S. 14:64.2, and 20 years at hard labor for attempted second degree kidnapping, LSA-R.S. 14:44.1, the sentences to run concurrently.
For the following reasons, we affirm Schaefer's convictions and sentences. We remand only for the trial judge to advise Schaefer of the prescriptive period for filing for post conviction relief.
On appeal, Schaefer assigned these district court errors:
(1) he was wrongly denied a continuance,
(2) the trial judge erred in denying his request for a particular responsive verdict,
(3) he was twice put in jeopardy for the same crime,
(4) his motion to suppress was erroneously denied,
(5) the state did not prove he was a fourth felony offender, and
(6) he was not advised of the prescriptive period for post conviction relief.
Also, he asks this court to search for errors patent.

FACTS
On May 14, 1996 at 11:15 p.m., a man named William Shields stopped at the Mardi *302 Gras truck top on Elysian Fields Avenue in New Orleans. Schaefer was at the truck stop along with another man and a woman. The man and woman asked Shields to give them a ride out of the neighborhood and Shields agreed. The woman sat in the middle of the front seat, the man sat on the other side of her while Schaefer sat in the camper part of Shields' Toyota pickup truck. Shields drove them to the Veterans Highway I-10 exit in Jefferson Parish and told them that this was as far as he was going. The man inside the truck asked Shields to take them to a friend's house, but Shields refused. Schaefer opened the driver's side door and put a knife to Shields' neck. Shields testified that Schaefer said, "Do what I tell you or you're going to die right here." He then told Shields, "Move over in the middle of the seat. The other guy is getting in and we're going for a ride."
Instead of moving to the middle, Shields slid all the way out of the truck. Shields testified that Schaefer was strangling him and was pressing his face into the mud on the ground. During this struggle, Schaefer shouted for the other man to help him get Shields back into the truck.
Another car approached, however, and Schaefer let Shields go. Schaefer and his friends then left the scene on foot. As a result of the struggle, Shields suffered two fractured toes.
Shields drove to a nearby gas station and told the people inside the station what had happened. They called 911. The police arrived at approximately 11:30 p.m. Shields gave a description of Schaefer as well as the two other people.
At 8 a.m. the next morning, Deputy Gerald Brewer of the Jefferson Parish Sheriff's Office brought Shields from his home to 6601 Veterans Boulevard to identify a possible suspect who had been detained two blocks from the scene of the crime the night before. The suspect matched the description of the perpetrator given by Shields. Shields positively identified Schaefer as the man who had put a knife to his neck the previous night. Shields also identified Schaefer at trial.
Deputy Brewer was the state's other trial witness. Schaefer did not present a defense.

ASSIGNMENT NO. 1
The original bill of information charged Schaefer with attempted armed robbery. On the day before the trial started (January 13, 1997), the state filed an amending bill charging Schaefer with attempted carjacking and attempted second degree kidnapping. From the record, it is apparent that the state intended to amend the original bill, which is marked, "Amended." Schaefer was arraigned and pled not guilty to the two new charges. Schaefer's attorney orally moved for a continuance, which was denied.
On the following day (January 14th), this colloquy took place between Schaefer's counsel and the trial judge:
MS. FUSELIER:
I would like to reiterate my objection to denying our continuance. These are not lesser included charges and the would require a different defense strategy that we have not had time to prepare for.
THE COURT:
We are going to accept the plea of not guilty to each count and we are going to deny the motion.
This motion was also made yesterday. You had indicated that you are going to apply for writs. What is your position? Have you applied for the writs?
MS. FUSELIER:
No. I have not applied for writs. I did not apply for a writ, Your Honor.
THE COURT:
Do you know of any other reason why we can't proceed?
MS. FUSELIER:
No, Your Honor.
THE COURT:
Okay....
When a bill of information is amended, a defendant may be entitled to a continuance. LSA-C.Cr.P. art. 489 provides as follows:
"If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the *303 defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution. If it becomes necessary to discharge the original jury from further consideration of the case, the trial before a new jury will not constitute double jeopardy."
The purpose of a continuance is to prevent prejudicial surprise to the defendant. See State v. Davis, 385 So.2d 193 (La.1980). The defendant has the burden to establish that an amendment to a bill of information has prejudiced his defense so as to necessitate a continuance. See State v. Issac, 527 So.2d 1045 (La.App. 5 Cir.1988), writs denied, 532 So.2d 175 (La.1988).
Here, Schaefer did not try to show the trial judge how or why he was being prejudiced by the amendments. On appeal, also, Schaefer has not shown any possible prejudice by the denial of the motion to continue.
In any event, the decision to grant or refuse a motion to continue is within the trial judge's sound discretion. Absent a showing of prejudice, the trial judge's denial in this case cannot be reversible error.

ASSIGNMENT NO. 2
Schaefer asked the trial judge to add "Attempted Theft" as a possible verdict responsive to attempted carjacking. The trial judge refused, instead giving the jury only two possible verdicts, guilty or not guilty. This was the correct procedure. The offense of carjacking does not include all of the elements of theft; further, the Code of Criminal Procedure does not specify any verdicts responsive to attempted carjacking other than the ones given to the jury.

ASSIGNMENT NO. 3
In this assignment of error, Schaefer contends that his convictions for attempted carjacking and attempted second degree kidnapping constituted double jeopardy, being multiple punishments for the same crime in violation of the state and federal constitutions. However, carjacking and second degree kidnapping are not the same. Evidence required for carjacking is not the same as evidence needed for a second degree kidnapping conviction.
Carjacking, as it applies here, is the intentional taking of a motor vehicle belonging to another in the presence of that person by use of force or intimidation.
Second degree kidnapping is defined in R.S. 14:44.1 as follows:
"A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
(1) Used as a shield or hostage;
(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
(3) Physically injured or sexually abused;
(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
C. Whoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence."
In this prosecution, the state relied on the provisions of (A)(3), (5) and (B)(1). The trial judge instructed the jury on all subsections of R.S. 14:44.1.
*304 By the very wording of the statutes, a conviction under the carjacking article requires proof of an additional fact or facts which second degree kidnapping does not. Second degree kidnapping similarly requires proof of an additional fact or facts not needed for a carjacking conviction. The evidence needed to support either conviction would not have been sufficient to support the other conviction. The "same evidence" test described in State v. Miller, 571 So.2d 603 (La.1990), at page 606, therefore, would not have been violated.
Under the facts and circumstances of this case, according to Shields' unchallenged testimony, there was no double jeopardy. If Schaefer had driven off or tried to drive away in Shields' truck after he (Shields) jumped out without trying to force him back inside, only carjacking or attempted carjacking would be involved.
On the other hand, if Schaefer and his friends had tried to take Shields off and let his truck alone, he (Schaefer) and his cohorts would have been charged with attempted second degree kidnapping, not carjacking.

ASSIGNMENT NO. 4
Schaefer argues that the identification of him by Shields was invalid and should have been discarded by the trial judge because it was one-on-one and was not made immediately after the crimes were committed.
Shields described Schaefer to the police as a thin man with blond hair, approximately six foot one, 160 pounds with a ruddy complexion, wearing blue jeans and a plaid shirt. Shields had been with Schaefer about 20 minutes the previous night and had a good look at his attacker's face and clothes.
A person matching Shields' description had been detained less than 12 hours of the crimes and within two blocks from when Shields was assaulted. Shields' identification was quick and positive.
At the suppression hearing, Schaefer presented no testimony or evidence to contradict Shields.
The factors to be considered in assessing the reliability and admissibility of an identification include the opportunity of the victim to view the criminal, the witness' degree of attention, the accuracy of any prior description, the level of certainty displayed at the confrontation and the time between crime and the face-off. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); also State v. Watson, 477 So.2d 788 (La.App. 5 Cir.1985), and other Louisiana cases adopting the Manson v. Brathwaite guidelines.
Considering these factors, there does not appear to be a likelihood of misidentification in Shields' straightforward recognition of Schaefer either the morning after the crimes or at the time of trial.

ASSIGNMENT NO. 5
Schaefer pled guilty as a fourth felony offender. He argues in this assignment of error that the trial judge erred in not making the state prove that the out-of-state convictions were felonies in Louisiana. Further, Schaefer contends, the state did not show that the cleansing period had not lapsed.
The record indicates, however, that Schaefer and the prosecutor entered into plea bargaining at the sentencing hearing and that Schaefer readily admitted all details of the prior convictions. Schaefer entered an unconditional plea, for which he received just about the same sentence he had originally received, which was 20 and 10 years to run concurrently. The new sentences were both for 20 years, to run concurrently.
Prior to accepting Schaefer's guilty plea, the trial judge advised the defendant of all of his rights and told him what the enhanced sentence would be. An unconditional plea, willingly and knowingly made, waives any and all non-jurisdictional defects and bars a defendant from later asserting on appeal that the state failed to produce sufficient proof at the multiple offender hearing. See State v. Crosby, 338 So.2d 584 (La.1976); State v. Perret, 628 So.2d 92 (La.App. 5 Cir.1993); and State v. Lavigne, 675 So.2d 771 (La.App. 4 Cir.1996), writs denied, 685 So.2d 140 (La. 1997).

*305 ASSIGNMENT NO. 6
Schaefer contends that the trial judge did not inform him of the prescriptive period for post conviction relief. The state agrees with this assertion. Accordingly, we remand for the trial judge to inform Schaefer of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate notice to him and to file written proof in the record that the notice was received.

ERROR PATENT
The sentences Schaefer received were statutorily lenient. The state neither objected at trial or on appeal; consequently, this Court will not address this issue.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED ONLY FOR ART. 930.8 NOTIFICATION.