MARC E. JOHNSON, Judge.
^Defendant, Christopher Johnson, appeals his conviction and sentence for armed robbery. For the reasons that follow, we. affirm.
Defendant was charged in a bill of information with armed robbery in violation of La. R.S. 14:64. He pled not guilty and filed several pretrial motions, including motions to suppress statements which were denied after a hearing. He proceeded to trial on January 19, 2010. A unanimous 12-person jury found defendant guilty as charged. He was sentenced to 50 years at hard labor without benefit of parole, probation, or suspension of sentence.
The State filed a multiple offender bill of information alleging defendant to be a second felony offender. Defendant admitted to the allegations in the multiple bill and was adjudicated a multiple offender. The trial court vacated his original sentence and resentenced defendant as a second felony offender to 50 years at hard labor without benefit of parole, probation, or suspension of sentence. His sentence *655 lswas ordered to run concurrently with the sentence imposed in a case from the 29th Judicial District Court.

FACTS

On December 1, 2007, Ms. Tracy Trues-dale was working at a Sonic fast food restaurant located on Airline Drive in Jefferson Parish when a man came into the food preparation area and asked for a job application. When Ms. Truesdale went to get an application, the man pointed a gun at her and demanded money. Ms. Trues-dale gave the man money from the safe and he walked away. The police responded to the scene and Ms. Truesdale gave a description of the perpetrator. She described him as a white male wearing a hoodie over his head with a tattoo on his neck.
Three days later, Detective Sergeant Darren Monie with the Jefferson Parish Sheriffs Office (JPSO) received information from the St. Charles Parish Sheriffs Office indicating they had interviewed defendant while investigating an unrelated matter. During the interview, defendant confessed to robbing the Sonic restaurant on Airline Drive three days earlier. Sgt. Monie subsequently met with and interviewed defendant at the St. Charles Parish Criminal Investigations Bureau. Defendant waived his Miranda rights and gave a statement to Sgt. Monie in which he admitted to robbing the Sonic. Defendant further stated he had discarded the Velcro straps that were around the packs of currency he had obtained during the robbery in the Kenner Rivertown neighborhood. Sgt. Monie traveled to Rivertown and recovered the straps.
At trial, the victim positively identified defendant as the person who robbed her.

J¿LAW AND ANALYSIS

Defendant’s sole assignment of error is that the trial court erred in proceeding to trial without determining defendant was competent to do so. The record shows the trial court expressly found defendant competent to proceed to trial. Thus, it appears defendant is arguing that the trial court erred in finding defendant competent.
On January 19, 2010, defendant appeared in court for trial. After some initial matters, defense counsel called defendant to the witness stand. Defense counsel asked defendant if he recalled the terms of a plea bargain offered by the State. Apparently, the State offered defendant a plea bargain whereby defendant would receive a sentence of 40 years for armed robbery and then an enhanced sentence of 49½ years as a second felony offender in exchange for his guilty plea. The defendant recalled the terms of the plea bargain, but stated he did not want to take it. The jury was then brought into the courtroom.
As the trial was getting ready to begin, defense counsel requested a bench conference. She informed the trial judge that defendant just advised her that he was not going to sit through the trial. She also indicated that she was concerned for her personal safety. The jury was removed from the courtroom.
The court then explored the matter with defendant. Defendant responded, “I’m not going to sit through another trial ... I might f*ck around and run over there and punch the f*ck out that D.A. That’s what I might do.” Defendant continued, “You’re going to see. All you have to do is tase me or gas me. I’m already on extended. I’m already locked up. I don’t give a f*ck what you all do. You all are going to see. Go ahead and start the trial.” Defendant was then shackled and restrained in his seat.
*656 Thereafter; the following exchange took place:
|BTHE COURT: All right, you all are done? Mr. Johnson, your behavior thus far is not helping your case. I’m getting ready to call the jury in. Do you understand that? Sir, do you understand that?
MR. JOHNSON: No, I don’t.
THE COURT: You don’t understand that?
MR. JOHNSON: I don’t understand nothing. I ain’t capable of understanding.
THE COURT: All right. You know fúlly what—
MR. JOHNSON: When they come in, I’m going to take to them all through the trial. You’ll have to gag me and everything else.
THE COURT: You understand that what you’re doing right now is not beneficial to your case and that this Court, if you cannot control yourself will gag you, or if you continue, we will remove you from the courtroom. Do you understand that? We will have the trial without you. Do you understand that?
MR. JOHNSON: That’s what I want. I don’t want to be in here for trial. Do the trial without me.
THE COURT: Well, right now—
MR. JOHNSON: ‘Cause I won’t be in here.,
THE COURT: —you’re going to be here. Right now you’re going to be here and you’re going to be ordered to remain quiet and to assist your counsel. Do you understand that?
(NO RESPONSE)
Subsequently, “out of an abundance of caution,” the prosecutor asked the trial court to offer its • views concerning the defendant’s statement that he did not understand the proceedings. The trial court responded:
It is my belief based upon his presence before the court at least during the last year and having sat through a previous trial with Mr. Johnson, that he is competent. He does understand the proceedings before him and that his claim now of incompetence, while made after a fairly aggressive morning, are only coming to delay this trial as is his behavior.
I find that he is competent. I find that he does understand the things presented to him. However, is anybody concerned about his competence?
|fiThe prosecutor replied, “[ajbsolutely not.... It is abundantly clear to me that the defendant is attempting in any way possible to retard the progress of this prosecution.” Defense counsel did not respond to the trial court’s inquiry. (R., p. 264).
The trial continued. After the jury was selected, defense counsel requested a bench conference where the following colloquy took place:
DEFENSE COUNSEL: Your Honor, based on the defendant’s behavior this morning, the defendant telling me— making the comment that he doesn’t really understand everything that’s going on; he’s high on drugs or whatever—
THE COURT: He’s high on drugs? Is that what — I’m asking for a clarification.
DEFENSE COUNSEL: I don’t know. I don’t know.
THE COURT: Is that what his statement to you was; that he’s high on drugs right now?
DEFENSE COUNSEL: Yes.
*657 Defense counsel then requested that defendant be drug tested. The trial judge refused again stating that she did not believe defendant was incompetent. She noted that defendant had been well behaved during jury selection. The trial court further stated:
I’ve observed him through the last trial. I observed him on court on numerous occasions. I have observed him this morning. Nothing in his behavior indicates to me that he is in any way incompetent or that he is under the influence of any type of narcotic that would impair his mental capacities.
His outburst this morning, and apparently his comments this afternoon are in line with the dilatory — with delaying this trial, than they have to do with anything else. He is sitting there rationally.
And as I said earlier, I commented to my staff how impressed I was with his behavior during the selection of the jury. He acted appropriately. He was not disruptive. He did not have any outbursts. He has been incarcerated for quite some time continuously and has been under the supervision of JPSO or the Department of Corrections for at least the past year and he has been handcuffed and shackled at this point within this court for at least the last four hours. Therefore, |7the opportunity for him to be under any type of narcotic seems to have severely diminished.
Therefore, I am not going to drug test him.
[[Image here]]
In terms of his behavior. He is under control right now. He is behaving himself. And again, I am looking at him. He appears just as he has on any other day before this court; competent and able to proceed.
Defense counsel objected to the trial court’s ruling and trial proceeded. There was no further mention of the defendant’s capacity to proceed.
A criminal defendant has a constitutional right not to be tried while legally incompetent. State v. Carmouche, 01-0405, p. 29 (La.05/14/02), 872 So.2d 1020, 1041. There is a legal presumption that a defendant is sane and competent to proceed. The legal presumption that a defendant is sane and responsible for his actions may be destroyed by rebutting evidence. Id.; La. R.S. 15:482.
La.C.Cr.P. art. 641 provides that “[mjental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.” Thd two-fold test of capacity to stand trial is whether the defendant: (1) understands the • consequences of the proceedings, and (2) has the ability to assist in his defense by consultation with counsel. State v. Bridgewater, 00-1529, pp. 13-14, (La.1/15/02), 823 So.2d 877, 892, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003).
The mental incapacity of the defendant to proceed may be raised at any time by the defense, the district attorney, or the court. La.C.Cr.P. art. 642; State v. Williams, 03-942, p. 6 (La.App. 5 Cir. 1/27/04), 866 So.2d 1003, 1008, writ denied, 04-450 (La.6/25/04), 876 So.2d 832. Any question regarding a defendant’s mental capacity must be deemed by the court to be bona fide and- in | sgood faith before the court considers if there are reasonable grounds to doubt capacity. State ex rel. Seals v. State, 00-2738, p. 6 (La.10/25/02), 831 So.2d 828, 833. Reasonable ground in this context refers to information which, objectively considered, should reasonably raise a doubt about the defendant’s compe *658 tency and alert the court to the possibility that the defendant can neither understand the proceedings, appreciate the significance of the proceedings, nor rationally aid his attorney in his defense. State v. Anderson, 2006-2987, p. 21 (La.9/9/08), 996 So.2d 978, 992, cert. denied, — U.S. -, 129 S.Ct. 1906, 173 L.Ed.2d 1057 (2009).
The trial court has discretion in deciding whether to order a sanity commission to inquire into the defendant’s present mental capacity to proceed. The appointment of a sanity commission is not a perfunctory matter, a ministerial duty of a trial court, or a matter of right. Carmouche, 01-0405 at 30, 872 So.2d at 1041-42. The Louisiana Supreme Court has explained that, “[a] trial judge is only required to order a mental examination of a defendant when there are reasonable grounds to doubt the defendant’s mental capacity to proceed.” Seals, 00-2738 at 5, 831 So.2d at 832.
A trial court’s determination on a defendant’s mental capacity to proceed is entitled to great weight on appellate review, and will not be overturned absent an abuse of that discretion. State v. Fish, 99-1280, p. 4 (La.App. 5 Cir. 4/12/00), 759 So.2d 937, 939.
In State v. Bridgewater, supra, the defense moved several times to have the trial court appoint a sanity commission. Although the defense expressed concern about the defendant’s competency to proceed, the attorneys’ main concern was that they could not communicate with the defendant because he was uncooperative, violent, and irrational, and disagreed with their trial strategies. The defense offered no medical evidence suggesting the defendant was incompetent. The trial judge | adenied the motions because the defendant was found competent a year earlier in an unrelated case, and because the trial judge had personally observed that the defendant exhibited a good understanding of his current circumstances and had a good handle on legal concepts.
On appeal, the defendant argued that the trial judge erred by refusing to appoint a sanity commission. The Louisiana Supreme Court held that the trial judge did not abuse his great discretion in declining to appoint a sanity commission under the circumstances of the case. The supreme court stated that, even assuming there was no prior evaluation in an earlier, unrelated case finding defendant competent to proceed, the trial judge was entitled to base his ultimate decision on his extensive prior dealings with the defendant. The supreme court noted that, although two defense attorneys voiced concern over the defendant’s behavior, those objections, standing alone, did not persuade them that the trial judge should have appointed a sanity commission. In sum, the supreme court concluded that, given the presumption of sanity and the trial judge’s numerous chances to observe defendant personally, defendant failed to demonstrate the trial judge abused his discretion in denying the numerous motions for the appointment of a sanity commission. Bridgewater, 00-1529 at 16, 823 So.2d at 893.
In the present case, the trial judge had personally observed defendant over the course of several criminal proceedings. Two months before the proceeding at issue, the trial judge had presided over a two-day trial in which defendant was charged with and convicted of simple robbery. In the present case, there were several pre-trial hearings where defendant was present and the trial judge had the opportunity to observe defendant’s demeanor. Immediately prior to trial, defendant acknowledged the State’s prior offer of a plea bargain and clearly stated 110that he had no interest in the plea bargain. Additionally, defendant presented no medical evidence to indicate he was incompetent.
*659 Defendant’s actions showed complete disrespect for the court and the trial court proceedings and appear to have been nothing more than a manipulative attempt to delay the trial. We find defendant’s behavior did not provide reasonable grounds to doubt his mental capacity to proceed. Considering the presumption of sanity, the trial judge’s numerous opportunities to personally observe defendant, the lack of medical evidence suggesting defendant was incompetent, and defendant’s prior experience with the legal system, we do not find the trial judge abused her discretion in determining defendant was legally competent to proceed to trial.

ERRORS PATENT

We have reviewed the record for errors patent in accordance with La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Hicks, 08-402, p. 13 (La.App. 5 Cir. 12/16/08), 3 So.3d 539, 547, and find no errors that require remedial action.
For the reasons stated above, defendant’s conviction and sentence for armed robbery are affirmed.

CONVICTION AND SENTENCE AFFIRMED