STATE OF LOUISIANA

VERSUS

HURSEN A. PATIN

NO. 19-KA-157

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 16-3330, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING


November 13, 2019


**JUDE G. GRAVOIS
JUDGE**


Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and Hans J. Liljeberg


**CONVICTIONS AND HABITUAL OFFENDER STIPULATION
AFFIRMED; ORIGINAL AND ENHANCED SENTENCES VACATED;
REMANDED FOR RESENTENCING**

    **JGG**

    **RAC**

    **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Paul D. Connick, Jr.
    Terry M. Boudreaux
    Andrea F. Long
    Blair C. Constant

COUNSEL FOR DEFENDANT/APPELLANT,
HURSEN A. PATIN
    Richard A. Spears

**GRAVOIS, J.**

Defendant, Hursen A. Patin, appeals his convictions and sentences resulting from guilty pleas to possession with intent to distribute cocaine, possession with intent to distribute marijuana, and possession of hydrocodone. For the following reasons, we affirm defendant's convictions and habitual offender stipulation, vacate defendant's enhanced sentence on count one and his sentences on counts two and three, and remand the matter to the trial court for resentencing, including clarification of defendant's parole status as of the time of resentencing.

<u>PROCEDURAL HISTORY</u>

On June 1, 2016, the Jefferson Parish District Attorney filed a bill of information charging defendant, Hursen A. Patin, with possession with intent to distribute cocaine in violation of La. R.S. 40:967(A) (count one); possession with intent to distribute marijuana in violation of La. R.S. 40:966(A) (count two); and possession of hydrocodone in violation of La. R.S. 40:967(C) (count three). Defendant pled not guilty at his arraignment held the following day.

On August 15, 2016, defendant withdrew his pleas of not guilty and pled guilty as charged. After advising defendant of his *Boykin*[1] rights, the trial court accepted defendant's pleas and sentenced him in accordance with the plea agreement "as to counts 1 and 2, 15 years in the Department of Corrections" and to five years in the Department of Corrections[2] on count three. Defendant's sentences were ordered to run concurrently with each other and with any and all other sentences, including the sentences on which he was "currently on parole."

Immediately thereafter, the State filed a habitual offender bill of information against defendant alleging that he was a second felony offender under La. R.S.

---

[1] *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

[2] This Court has previously held that when the judge states that the defendant is sentenced to the "Department of Corrections," the sentence is necessarily at hard labor. *State v. Jamison*, 17-49 (La. App. 5 Cir. 5/17/17), 222 So.3d 908, 909 n. 2.

15:529.1 as to count one. Defendant stipulated to being a second felony offender as to count one. The trial court then resentenced defendant in accordance with the plea agreement to fifteen years in the Department of Corrections on count one to run concurrently with any and all sentences imposed, including the sentences on which he was "currently on parole."

Subsequently, on December 14, 2016, defendant, *pro se*, filed a "Motion to Request a Psychiatric Evaluation And To Amend, Modify or Reduce Sentence." In this pleading, defendant requested the reversal of his pleas or that the trial court order a psychiatric evaluation to determine whether he had the capacity to understand the nature of the crimes to which he pled guilty, his pleas, the proceedings, and the sentences imposed. He also requested a reduction of his habitual offender sentence due to his mental illnesses and his cooperation with a detective.

On January 3, 2017, the trial court issued an order denying defendant's *pro se* motion. It found that defendant was not entitled to relief because under La. C.Cr.P. art. 881, he had begun serving his sentences and could not appeal or seek review of a sentence imposed in conformity with a plea agreement that was set forth in the record at the time of the plea.

On September 14, 2018, defendant, through counsel, filed by facsimile an "Application for Post-Conviction Relief with Incorporated Memorandum and Motion to Correct Illegal Sentence." In his application, defendant claimed that his trial counsel was ineffective because she was aware of defendant's mental deficiencies, but did nothing to make them clear to the trial court. Defendant argued that at the time of the plea in question, he was not on his prescribed medications, and he was not mentally capable of making decisions regarding plea negotiations.

19-KA-157                                       2

In response, on September 24, 2018, the trial court issued an order dismissing defendant's application for post-conviction relief ("APCR") without prejudice, finding that it contained an issue as to form as defense counsel failed to use a form approved by the Louisiana Supreme Court. The order further noted that defendant's application was premature since he had not exhausted his appellate rights, and thus, his APCR was procedurally barred from review. Finally, the trial court found that because defendant did not allege a valid claim reviewable in accordance with La. C.Cr.P. art. 930.3 or 930.4, he was not entitled to the sought-after relief at that time. However, in its order, the trial court further included that "petitioner may file an application for post-conviction relief requesting an out-of-time appeal per LSA-C.Cr.P. art. 924.1 and 930.8(A), within 30 days of this order."

On October 24, 2018, defendant, again through counsel, timely filed by facsimile a Motion for Extension of time to "re-file in accordance with the Order of the Court." He requested an additional seven days to "re-file." The order granting the extension is blank, and it does not appear that the motion was ruled on.

On November 15, 2018, defense counsel filed by facsimile an Application for Post-Conviction and Motion to Correct Illegal Sentence. Defendant requested that the trial court grant him an out-of-time appeal. On December 3, 2018, the trial court issued an order dismissing defendant's APCR without prejudice and granting his request for an out-of-time appeal, noting that it had "previously granted petitioner extra time for petitioner to file this request." This appeal followed.[3]

---

[3] The State, in brief, argues that this appeal is untimely because the trial court was without authority to extend the time limitation for defendant to seek an out-of-time appeal through his APCR. Under the circumstances present in this case, considering the substance of defendant's pleading in order to do substantial justice to the parties, we construe defendant's original timely-filed APCR as a request for an out-of-time appeal, and we, thus, will consider his appeal. *See State v. Webb*, 15-0962 (La. 9/25/15), 175 So.3d 954, 955 (observing that "[c]ourts should look through the caption of pleadings in order to ascertain their substance and to do substantial justice to the parties") (quoting *Smith v. Cajun Insulation*, 392 So.2d 398, 402 n. 2 (La.1980)).

## FACTS

Defendant pled guilty, and thus, the facts were not fully developed at a trial. However, during the guilty plea colloquy, the State provided a factual basis for defendant's charges. The State indicated that if it proceeded to trial, it would prove beyond a reasonable doubt that on April 14, 2016, defendant knowingly or intentionally possessed with intent to distribute cocaine in violation of La. R.S. 40:967(A) (count one); knowingly or intentionally possessed with intent to distribute marijuana in violation of La. R.S. 40:966(A) (count two); and knowingly or intentionally possessed hydrocodone in violation of La. R.S. 40:967(C) (count three). Defendant admitted during the colloquy that he was guilty of the crimes.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, defendant argues that the record is devoid of any evidence that the filing of the habitual offender bill and his resentencing immediately following were part of the plea agreement. The State responds that to the contrary, the record reflects that defendant's stipulation to the habitual offender bill as a second felony offender was part of the negotiated plea agreement, of which the parties and the trial judge were all aware.

A plea bargain is viewed as a contract between the State and one accused of a crime. *State v. Mitchell*, 08-629 (La. App. 5 Cir. 1/13/09), 7 So.3d 744, 751, *writ denied*, 09-0254 (La. 10/30/09), 21 So.3d 270. In determining the validity of agreements not to prosecute or of plea agreements, Louisiana courts generally refer to rules of contract law, while recognizing at the same time that a criminal defendant's constitutional right to fairness may be broader than his or her rights under contract law. *State v. Louis*, 94-0761 (La. 11/30/94) 645 So.2d 1144, 1148. The validity of any guilty plea depends on the circumstances of the case. *State v. Filer*, 00-0073 (La. 6/30/00), 762 So.2d 1080 (*per curiam*).

Once a defendant is sentenced, only those pleas that are constitutionally infirm may be withdrawn by appeal or post-conviction relief. *State v. Joseph*, 14-762 (La. App. 5 Cir. 3/25/15), 169 So.3d 661, 664. A guilty plea is constitutionally infirm if it is not entered freely and voluntarily, if the *Boykin* colloquy is inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept. *State v. McCoil*, 05-658 (La. App. 5 Cir. 2/27/06), 924 So.2d 1120, 1124. Under substantive criminal law, there are two alternative remedies available for a breach of a plea bargain: (1) specific performance of the agreement; or (2) nullification or withdrawal of the plea. *Mitchell*, *supra*.

The record reflects that immediately after defendant's original sentences were imposed, the State filed in open court the habitual offender bill of information against him on count one, alleging he was a second felony offender. The State indicated that it had given trial counsel the habitual offender bill to review with her client, and trial counsel stated that she and defendant had reviewed it. At that time, the trial judge then asked defendant if he intended to stipulate to the habitual offender bill, and defendant responded affirmatively. Defendant verbally acknowledged that he was provided a copy of the habitual offender bill and was able to review it with his attorney. Defendant, on that same date, also executed a written waiver of rights form relevant to the habitual offender proceeding. On the habitual offender waiver of rights form, defendant placed his initials next to an advisal that a copy of the habitual offender bill was provided to him and was reviewed by his attorney. During the colloquy and on the habitual offender waiver of rights form, defendant expressed that he was satisfied with the trial court and his attorney's efforts to explain the rights and consequences regarding the habitual offender bill, and he denied during the colloquy having any questions concerning the stipulation.

Accordingly, in conclusion, we find no merit to defendant's arguments that he was unaware of the State's intention to file a habitual offender bill against him on count one and that it was not part of his negotiated plea agreement. Further, the record reflects that defendant was advised of the habitual offender rights he would waive by stipulating to the habitual offender bill, and defendant received the agreed upon enhanced sentence. *See* La. C.Cr.P. art. 881.2; *State v. Moore*, 06-875 (La. App. 5 Cir. 4/11/07), 958 So.2d 36, 46. Therefore, there are no constitutional infirmities in defendant's stipulation to the habitual offender bill. This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, defendant argues that the trial court failed to conduct an inquiry into his mental state to ascertain whether he could knowingly and competently enter into a plea agreement. He suggests the failure to do so requires that his guilty pleas be vacated. Defendant asserts that the record contains evidence that he suffers from serious mental illnesses for which he takes many medications. The State responds that defendant is not entitled to relief as he has failed to establish it was more probable than not he lacked the mental capacity to enter his pleas.

Several months after the guilty plea proceeding, on December 14, 2016, defendant filed a *pro se* Motion to Request a Psychiatric Evaluation And To Amend, Modify or Reduce Sentence. In his motion, defendant provided the names of several employees at the Jefferson Parish Human Health Care Authority and Behavior Center, who he alleged shared in his concern that he was not capable of entering his pleas. Defendant stated that prior to the commission of his underlying crimes, defendant was diagnosed by these doctors with:

a) major depressive affective disorder recurrent episode severe degree specified with psychotic behavior;

b) schizo, paranoid nos [sic];

c) post-traumatic stress disorder;

d) schizophrenia disorder;

e) other and unspecified hyperlipidemia dyslipidemia; and

f) other abnormal glucose.

Defendant also contended that he was taking the medications Seroquel, Zoloft, Hydrocoxyzine Pamoate, Atorvastatin Calcium, and Depakate and listed their various side effects. Defendant wrote that while he was in the Jefferson Parish Correctional Center during pre-trial proceedings, he wrote a letter to the Jefferson Parish Correctional Center chaplain that he wanted to die as "he was an unconsented seed of evil and a letter to you expressing the same." Defendant expressed that his psychological disorders began in "1968 when his mother was raped at the age of 13 years old," and other mental diagnoses included short attention span, behavioral problems, slow learning disorder, mentally and emotionally disturbed, hallucinating disorder, paranoid disorder, personality disorder, antisociable disorder, and drug and alcohol disorder. He stated that several hospitals in the area had psychiatric reports to verify his conditions.

Attached to defendant's *pro se* motion are three pages from a thirty-two-page document entitled "Complete EMR Record," dated July 25, 2016. The documentation contains defendant's information and prescribed medications, including Seroquel, Zoloft, and Depakote. The document further contains a section called "Current Problems" and contains references to an unspecific mood disorder, "major depressive affective disorder recurrent episode severe degree specific as with psychotic behavior," "major depression disorder … in full remission," post-traumatic stress disorder, and "schizo, paranoid."

On January 3, 2017, the trial court denied defendant's *pro se* motion, finding that his sentence could not be amended under La. C.Cr.P. art. 881, and he was not entitled to the relief sought.

On appeal, defendant does not claim any specific encounters with either his trial counsel or the trial judge during pre-trial proceedings or at the time of his pleas that indicated he was not "clear-headed and competent." He does not assert that he raised the issue of his competency prior to pleading guilty, nor does he cite any instances which would have resulted in the trial court having a reasonable ground to require a mental examination. Rather, he argues that in light of his allegations made after he pled guilty that he suffers from mental illnesses, the trial court failed to inquire into whether he was able to knowingly and competently enter his pleas at the time they were made.

A defendant does not have an absolute right to withdraw a guilty plea. *State v. Williams*, 18-71 (La. App. 5 Cir. 7/31/18), 251 So.3d 1250, 1256; *State v. Honeycutt*, 41,601 (La. App. 2 Cir. 2/28/07), 953 So.2d 914, 918. As previously stated, once a defendant is sentenced, only those pleas that are constitutionally infirm may be withdrawn by appeal or post-conviction relief. *Joseph*, *supra*. A guilty plea is constitutionally infirm if it is not entered freely and voluntarily, if the *Boykin* colloquy is inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept. *McCoil*, *supra*. A guilty plea will not be considered valid unless the plea was a free and voluntary choice on the part of the defendant. *State v. Nuccio*, 454 So.2d 93, 104 (La. 1984); *State v. Carroll*, 17-17 (La. App. 5 Cir. 6/29/17), 224 So.3d 1179, 1185. Under *Boykin*, the decision to plead guilty will not be considered free and voluntary unless, at the very least, the defendant was advised of his constitutional rights against self-incrimination, to a trial by jury, and to

confront his accusers. *Id.* The waiver of those rights must be on the record, unequivocal, express and knowing, and free and voluntary. *Id.*

If a defendant pleads guilty, he normally waives all non-jurisdictional defects in the proceedings leading up to the guilty plea, and precludes review of such defects either by appeal or post-conviction relief. *State v. Wingerter*, 05-697 (La. App. 5 Cir. 3/14/06), 926 So.2d 662, 664. Additionally, an unconditional plea, willingly and knowingly made, waives any and all non-jurisdictional defects and bars a defendant from later asserting on appeal that the State failed to produce sufficient proof at the habitual offender hearing. *State v. Schaefer*, 97-465 (La. App. 5 Cir. 11/25/97), 704 So.2d 300, 304.

A defendant in a criminal case is presumed sane and responsible for his actions, and the defendant bears the burden of proving otherwise. *State v. Tranchant*, 10-459 (La. App. 5 Cir. 11/23/10), 54 So.3d 730, 734, *writ denied*, 10-2821 (La. 4/29/11), 62 So.3d 108. The standard of proof is by a preponderance of the evidence, and the defendant must show that it was more probable than not that he lacked mental capacity to enter the guilty plea. *Id.*

A criminal defendant has a constitutional right not to be tried while legally incompetent. *State v. Carmouche*, 01-0405 (La. 5/14/02), 872 So.2d 1020, 1041; *State v. Pullen*, 19-4 (La. App. 5 Cir. 8/7/19), 2019 WL 3677889. In Louisiana, a defendant's mental incapacity to proceed exists when, as a result of mental disease or defect, he presently lacks the capacity to understand the proceedings against him or to assist in his defense. La. C.Cr.P. art. 641; *Pollard*, *supra*. A defendant's mental incapacity to proceed may be raised by the defense, the district attorney, or the court at any time. La. C.Cr.P. art. 642; *State v. Johnson*, 10-612 (La. App. 5 Cir. 1/25/11), 60 So.3d 653, 657, *writ denied*, 11-316 (La. 6/17/11), 63 So.3d 1038. The trial judge is required to order a mental examination of the defendant only when he has a reasonable ground to doubt the defendant's mental capacity to

proceed. La. C.Cr.P. art. 643; *State v. Pugh*, 02-171 (La. App. 5 Cir. 10/16/02), 831 So.2d 341, 349.

In *Tranchant*, *supra*, the defendant challenged the validity of his guilty pleas to charges of aggravated rape and aggravated burglary. *Id.*, 54 So.3d at 732-33. More specifically, the defendant alleged that despite evidence of mental illness and mental retardation, the trial judge made no attempt to determine whether the defendant was able to understand the consequences of his guilty pleas or to inform him that he may have been waiving his plea of not guilty by reason of insanity. *Id.* at 734. Following a review of the record, this Court found no evidence indicating the defendant's guilty plea was in any way constitutionally infirm. *Id.* at 733. The record showed that during the plea colloquy, the trial judge advised the defendant of the nature of the charges to which he was pleading guilty and further advised him of his right to a jury trial, his right to confrontation, and his privilege against self-incrimination. The defendant indicated that he understood these rights and that by pleading guilty, he was waiving those rights. *Id.* Finding no merit to the defendant's argument that his guilty pleas were invalid, this Court noted that at the time the defendant sought to withdraw his guilty pleas, he failed to provide any documentation to substantiate his contention that his mental disorders prevented him from entering a free and voluntary plea to the charged offenses. *Id.* at 734. Further, this Court noted that the defendant had the opportunity during the plea colloquy to inform the trial court that he did not understand the proceedings against him, but failed to do so, and neither the trial court nor trial counsel, who observed the defendant at the time of his guilty plea, found any reason to question his ability to follow the court proceedings.

In the present case, upon review of the record, we find that there are no constitutional infirmities as to defendant's pleas. During the colloquy, the trial judge informed defendant of the charges to which he was pleading, his *Boykin*

rights, and his waiver of those rights by pleading guilty, and defendant indicated his understanding of the charges and the waiver of his rights. Defendant acknowledged that he was stipulating to the habitual offender bill and his waiver of certain rights by entering his stipulation. Defendant denied that anyone had forced or coerced him to plead guilty or made promises or threatened him to enter his pleas. Also, defendant conveyed his understanding that he was admitting he had committed the crimes of which he was charged by pleading guilty. When the State provided a factual basis for the crimes, defendant indicated that he heard the State's factual basis and reiterated that he had committed the crimes. Defendant also acknowledged the sentences he would receive as a result of his guilty pleas and his stipulation to the habitual offender bill. The trial court asked defendant if he had any questions for his trial counsel or the trial judge as it concerned the pleas and habitual offender stipulation, and defendant responded negatively. He responded affirmatively when asked if he was satisfied with his trial counsel's efforts to explain his habitual offender rights.

In addition, the waiver of rights form as to defendant's underlying convictions and sentences, dated August 15, 2016—the same date on which he pled guilty—reflects advisals of defendant's *Boykin* rights and the waiver of his rights by pleading guilty as well as the sentences he would receive. Defendant's initials appear beside the advisal of each of his *Boykin* rights and that his trial counsel had informed him of the sentences he would receive. Moreover, this waiver of rights form contains a specific advisal that defendant was not suffering from any physical or mental impairment that would affect his competency to enter his pleas. Defendant initialed beside this advisal and placed his signature at the bottom of the form.

Without any indication that defendant suffered from mental illnesses, we find that the trial judge was not required to make an inquiry as to whether

defendant was competent to proceed. Nonetheless, the trial judge did inquire into defendant's understanding of the consequences of pleading guilty and his stipulation to the habitual offender bill, and asked defendant whether he had any questions concerning the proceedings and if he was satisfied with his trial counsel. Defendant's simple and straightforward answers to the trial judge's questions during the colloquy fail to support his assertion that he did not understand the consequence of his pleas, the proceedings, or the sentences imposed. Both trial counsel and the trial court observed defendant during the guilty plea proceeding and found no reason to question his ability to follow the proceedings. Furthermore, the waiver of rights form reflects a specific notation that defendant was not suffering from any physical or mental impairments that would affect his competency to enter his pleas, and defendant initialed next to this advisal. Although defendant submitted documentation suggesting that he has mental issues, we find the existence of this documentation, which is not authenticated, does not in any way prove that any mental disorders prevented him from entering free and voluntary pleas.[4]

In conclusion, defendant has not shown that his pleas or habitual offender stipulation were unknowingly and unintelligently entered or that he was not of sound mental capacity at the time his pleas were entered. There are no constitutional infirmities in defendant's pleas, and defendant has not shown it was more probable than not that he lacked the mental capacity to enter his pleas. This assignment of error is without merit.

---

[4] In the same pleading in which he first mentioned that he suffers with multiple mental illnesses and was prescribed many medications for these illnesses, defendant also asked the trial court to consider that he cooperated with a law enforcement officer in hopes for a reduction of his habitual offender sentence. We find that this request by defendant is telling as to his state of mind, and more importantly, as to his mental capacity. Considering this, along with his request for a psychiatric evaluation and vacation of his pleas, we find that defendant was only expressing a change of heart or dissatisfaction with his sentences after he had served several months of his sentences. Dissatisfaction with a sentence or a mere change of heart or mind by the defendant as to whether he made a good bargain will not ordinarily support allowing the withdrawal of a bargained guilty plea. *State v. Green*, 03-410 (La. App. 5 Cir. 10/28/03), 860 So.2d 237, 242, *writ denied*, 03-3228 (La. 3/26/04), 871 So.2d 346. Defendant cannot seek review of his sentences which were imposed in conformity with the plea agreement. *See* La. C.Cr.P. art. 881.2.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990).

First, the sentencing transcript fails to reflect that the trial court vacated defendant's original sentence on count one prior to imposing defendant's enhanced sentence as required by La. R.S. 15:529.1(D)(3). This Court has found that corrective action is not required where the commitment/minute entry eliminates any possible confusion as to the terms of the defendant's confinement, and thus, the failure of the transcript to show that the trial court vacated an original sentence before resentencing a defendant as a habitual offender does not affect the substantial rights of the defendant. *See State v. Holmes*, 12-351 (La. App. 5 Cir. 12/11/12), 106 So.3d 1076, 1083, *writ denied*, 13-0086 (La. 6/14/13), 118 So.3d 1080.

Here, the sentencing minute entry clearly reflects that the trial court vacated defendant's original sentence on count one, and that he was sentenced under La. R.S. 15:529.1. However, the sole State of Louisiana Uniform Commitment Order ("UCO") does not reflect that defendant's sentence on count one was enhanced but states that a habitual offender bill proceeding occurred. Regardless, we find there is no possible confusion as to the terms of defendant's confinement on count one because the trial court essentially reimposed the same sentence. *See State v. Ellison*, 17-319 (La. App. 5 Cir. 12/13/17), 234 So.3d 217, 222, *writ denied*, 18-0053 (La. 10/29/18), 255 So.3d 568.

Second, in imposing defendant's enhanced sentence on count one of fifteen years at hard labor, the trial court failed to state the sentence was to be served without the benefit of probation or suspension of sentence pursuant to La. R.S. 15:529.1(G). The restrictions on parole eligibility imposed on habitual offender

sentences under La. R.S. 15:529.1 "are those called for in the reference statute." *State v. Esteen*, 01-879 (La. App. 5 Cir. 5/15/02), 821 So.2d 60, 79 n. 24, *writ denied*, 02-1540 (La. 12/13/02), 831 So.2d 983. At the time of the underlying offense, the reference statute called for the first two years of the sentence to be served without the benefit of parole, probation, or suspension of sentence. *See* La. R.S. 40:967(B)(4)(b). Therefore, defendant received an illegally lenient enhanced sentence on count one since the trial court failed to restrict the benefit of parole for the first two years and the benefit of probation and suspension of sentence for the entirety of the enhanced sentence. However, no corrective action is required as to defendant's enhanced sentence because under La. R.S. 15:301.1 and *State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790, a statute's requirement that a defendant be sentenced without the benefit of parole, probation, or suspension of sentence is self-activating.

Third, at the time of the offense, a penalty for possession with intent to distribute marijuana carried a mandatory fine of "not more than fifty thousand dollars." *See* La. R.S. 40:966(B)(3). The trial court did not impose any fine as part of defendant's sentence on count two. While this Court has held that statutes providing for a fine of "not more than" a specified amount do require a mandatory fine, this Court has also recognized that the matter is not free from doubt. *State v. Kerlec*, 06-838 (La. App. 5 Cir. 4/11/07), 957 So.2d 810, 815, *writ denied*, 07-1119 (La. 12/7/07), 969 So.2d 626. Although this Court has the authority to correct an illegal sentence at any time pursuant to La. C.Cr.P. art. 882, the authority to correct an illegally lenient sentence is permissive rather than mandatory. However, it appears correction of defendant's illegally lenient sentence on count two as to a fine is unnecessary as the trial court imposed an indeterminate sentence, as discussed below.

Finally, in imposing defendant's sentences, the trial court ordered defendant's sentences to run concurrently with each other and any and all other sentences he had, including those on which he was "currently on parole." Also, when imposing his habitual offender sentence, the trial court ordered defendant's enhanced sentence to run concurrently with any and all sentences imposed, including those on which he was "currently on parole." The sentencing minute entry and the UCO reflect that the trial court ordered defendant's original and enhanced sentences to run concurrently with any and all other sentences he may be serving, "including parole time." The record does not contain any evidence of defendant's parole status.

In *State v. Ott*, 12-111 (La. App. 5 Cir. 10/16/12), 102 So.3d 944, 955, this Court found that the defendant received indeterminate sentences under La. C.Cr.P. art. 879 because the trial court ordered his sentences to run concurrently with his "parole time," and the record was unclear as to the defendant's parole status at the time of his sentencing. This Court noted that "[u]nlike probation, there is no prohibition against the trial judge ordering a sentence to run concurrent with a parole revocation," but nonetheless concluded the sentences were indeterminate and remanded to the trial court for clarification of defendant's parole status. *See also State v. Jamison*, *supra*, 222 So.3d at 919.

Accordingly, we find that defendant's enhanced sentence on count one and his sentences on counts two and three are indeterminate, and thus in violation of La. C.Cr.P. art. 879, because defendant's parole status at the time his sentences were imposed is unclear from the record. We therefore vacate defendant's enhanced sentence on count one and his sentences on counts two and three and remand the matter to the trial court for resentencing, including clarification of defendant's parole status as of the time of resentencing.

## CONCLUSION

For the foregoing reasons, defendant's convictions and habitual offender stipulation are affirmed, defendant's enhanced sentence on count one and his sentences on counts two and three are vacated, and the matter is remanded to the trial court for resentencing, including clarification of defendant's parole status as of the time of resentencing.

**CONVICTIONS AND HABITUAL OFFENDER STIPULATION AFFIRMED; ORIGINAL AND ENHANCED SENTENCES VACATED; REMANDED FOR RESENTENCING**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 13, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 19-KA-157

## E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
TERRY M. BOUDREAUX (APPELLEE)       RICHARD A. SPEARS (APPELLANT)       ANDREA F. LONG (APPELLEE)
JULIET L. CLARK (APPELLEE)       THOMAS J. BUTLER (APPELLEE)

## MAILED
TANYA P. FAIA (APPELLANT)       HON. PAUL D. CONNICK, JR. (APPELLEE)
ATTORNEY AT LAW       BLAIR C. CONSTANT (APPELLEE)
1421 NORTH CAUSEWAY BOULEVARD       ASSISTANT DISTRICT ATTORNEYS
SUITE 101       TWENTY-FOURTH JUDICIAL DISTRICT
METAIRIE, LA 70002       200 DERBIGNY STREET
       GRETNA, LA 70053